**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MAINE**

THE AMERICAN HOSPITAL ASSOCIATION, THE MAINE HOSPITAL ASSOCIATION, EASTERN MAINE MEDICAL CENTER, NATHAN LITTAUER HOSPITAL & NURSING HOME, UNITY MEDICAL CENTER, and DALLAS COUNTY MEDICAL CENTER,

*Plaintiffs*,

v.

ROBERT F. KENNEDY, JR., Secretary of the U.S. Department of Health and Human Services, THOMAS J. ENGELS, Administrator, Health Resources and Services Administration, THE HEALTH RESOURCES AND SERVICES ADMINISTRATION, THE UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, AND THE UNITED STATES OF AMERICA,

*Defendants*.

Case No. 1:26-cv-00515-LEW

**ABBVIE INC.'S, PHARMACYCLICS LLC'S, BRISTOL-MYERS SQUIBB COMPANY'S, AND BOEHRINGER INGELHEIM PHARMACEUTICALS, INC.'S MOTION TO INTERVENE WITH INCORPORATED MEMORANDUM OF LAW**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........ ii

INTRODUCTION ........ 1

BACKGROUND ........ 1

ARGUMENT ........ 5

I. Movants Are Entitled To Intervene Under Rule 24(a). ........ 5

II. Alternatively, Intervention Is Warranted Under Rule 24(b). ........ 10

CONCLUSION ........ 10

# TABLE OF AUTHORITIES

## Cases

*Am. Hosp. Ass'n, et al. v. Kennedy, et al.*,
2026 WL 2913956 (1st Cir. Sept. 25, 2026)....6, 8

*Am. Hosp. Ass'n v. Kennedy*,
164 F.4th 28 (1st Cir. 2026)....7, 8

*Am. Hosp. Ass'n v. Kennedy*,
2025 WL 3677386 (D. Me. Dec. 18, 2025)....8

*Am. Hosp. Ass'n v. Kennedy*,
820 F. Supp. 3d 30 (D. Me. 2025)....4, 8

*Am. Hosp. Ass'n v. Kennedy*,
No. 2:25-cv-00600 (D. Me. Feb. 10, 2026)....4

*Animal Prot. Inst. v. Martin*,
241 F.R.D. 66 (D. Me. 2007)....8

*Ass'n of Conn. Lobbyists LLC v. Garfield*,
241 F.R.D. 100 (D. Conn. 2007)....10

*B. Fernández & Hnos., Inc. v. Kellogg USA, Inc.*,
440 F.3d 541 (1st Cir. 2006)....5, 6, 9

*Brennan v. N.Y.C. Bd. of Educ.*,
260 F.3d 123 (2d Cir. 2001)....9

*Canadian Nat. Ry Co. v. Montreal, Me. & Atl. Ry., Inc.*,
2010 WL 5168003 (D. Me. Dec. 14, 2010)....5

*Conservation L. Found. of New England, Inc. v. Mosbacher*,
966 F.2d 39 (1st Cir. 1992)....5, 6, 8, 9

*Cotter v. Mass. Ass'n of Minority L. Enf't Officers*,
219 F.3d 31 (1st Cir. 2000)....6, 9

*Daggett v. Comm'n on Governmental Ethics & Election Pracs.*,
172 F.3d 104 (1st Cir. 1999)....7, 10

*Geiger v. Foley Hoag LLP Ret. Plan*,
521 F.3d 60 (1st Cir. 2008)....9

*Mass. Food Ass'n v. Mass. Alcoholic Beverages Control Comm'n*,
197 F.3d 560 (1st Cir. 1999)....8

*Melone v. Coit*,
100 F.4th 21 (1st Cir. 2024)....10

*NERO Int'l Holding Co. v. NEROtix Unlimited Inc.*,
585 F. Supp. 3d 152 (D. Mass. 2022)....5

*Nextel Commc'ns of Mid-Atl., Inc. v. Town of Hanson*,
311 F. Supp. 2d 142 (D. Mass. 2004)....9

*Novartis Pharms. Corp. v. Kennedy*,
182 F.4th 1027 (D.C. Cir. 2026)....2, 8

*Peaje Invs. LLC v. García-Padilla*,
845 F.3d 505 (1st Cir. 2017)....1

*Pub. Serv. Co. of N.H. v. Patch*,
136 F.3d 197 (1st Cir. 1998)....6

*T-Mobile Northeast LLC v. Town of Barnstable*,
969 F.3d 33 (1st Cir. 2020)....7

*Tirrell v. Edelblut*,
2025 WL 1939965 (D.N.H. July 15, 2025)....10

*Victim Rights Law Center v. Rosenfelt*,
988 F.3d 556 (1st Cir. 2021)....7

**Statutes**

42 U.S.C. § 256b....1, 2

42 U.S.C. § 1320f-2(a)(1)....2

42 U.S.C. § 1320f-2(a)(3)....2

42 U.S.C. § 1320f-2(a)(5)....2

42 U.S.C. § 1320f-2(d)....3

42 U.S.C. § 1320f-6(a)....2, 3

42 U.S.C. § 1320f-6(c)....2

**Other Authorities**

CMS, *CMS Announces Manufacturer Participation in Third Cycle of Medicare Drug Price Negotiation* (Mar. 13, 2026), https://tinyurl.com/46c52rcv....4

CMS, *Medicare Drug Price Negotiation Program: Final Guidance, Implementation of Sections 1191-1198 of the Social Security Act for Initial Price Applicability Year 2028 and Manufacturer Effectuation of the Maximum Fair Price in 2026, 2027, and 2028* (Sept. 30, 2025), https://tinyurl.com/uf86dc2f....2

HRSA, 340B Rebate Model Pilot Program, https://tinyurl.com/bdhpur9n....4

**Rules**

Fed. R. Civ. P. 24(a)(2) ........................................................ 6

Fed. R. Civ. P. 24(b)(1)(B) ........................................................ 10

Fed. R. Civ. P. 24(b)(3) ........................................................ 10

**Regulations**

90 Fed. Reg. 36,163 (Aug. 1, 2025) ........................................................ 3

91 Fed. Reg. 48,883 (Aug. 3, 2026) ........................................................ 4, 7

## INTRODUCTION

AbbVie Inc. and Pharmacyclics LLC (together, "AbbVie"), Bristol-Myers Squibb Company ("BMS"), and Boehringer Ingelheim Pharmaceuticals, Inc. ("Boehringer") (collectively, "Movants") seek to intervene and defend their participation in the 340B Rebate Model Pilot ("Pilot Program"). The Pilot Program is a Health Resources and Services Administration ("HRSA") project that enables manufacturers to comply with the requirements of the 340B Drug Pricing Program and the Drug Price Negotiation Program ("DPNP") established by the Inflation Reduction Act ("IRA"). Movants are subject to the IRA, submitted plans for the Pilot Program, and are among the ten manufacturers approved to participate.[1] Movants are entitled to intervene as of right under Federal Rule of Civil Procedure 24(a) to defend their rebate plans. Alternatively, they seek Rule 24(b) permissive intervention. Movants also request that Rule 24(c)'s responsive pleading requirement be waived or deferred until the government is ordered to answer the complaint, as no party will be prejudiced. *See Peaje Invs. LLC v. García-Padilla*, 845 F.3d 505, 515 (1st Cir. 2017).

## BACKGROUND

***The 340B Program***. The federal 340B statute requires participating pharmaceutical manufacturers, like Movants, to offer their drugs at steep discounts to certain types of nonprofit healthcare providers called "covered entities." 42 U.S.C. § 256b(a)(1). The net price manufacturers must offer to covered entities—known as the "ceiling price"—is set by a statutory formula. *Id.* § 256b(a)(1)-(2). The ceiling price for some drugs can be as low as one penny per unit. Scheidler Decl. ¶ 3. The text of the 340B statute explicitly allows manufacturers to provide

[1] AbbVie's Pilot Program plan covers its drugs Imbruvica, Linzess, and Vraylar. BMS's Pilot Program plan covers its drugs Eliquis and Pomalyst. Boehringer's Pilot Program plan covers its drugs Jardiance, Ofev, and Tradjenta.

the 340B price through either upfront discounts or post-sale rebates. 42 U.S.C. § 256b(a)(1). Nonetheless, HRSA claims the authority to approve (or conversely to prohibit) the use of rebates. Historically, at HRSA's direction, the 340B price has often been provided via upfront discounts. *Novartis Pharms. Corp. v. Kennedy*, 182 F.4th 1027, 1029 (D.C. Cir. 2026).

***The Drug Price Negotiation Program***. Some manufacturers, including Movants, are also subject to the DPNP price-control regime, which went into effect this year. Under that regime, the Secretary of Health and Human Services selects drugs and negotiates a "maximum fair price" or "MFP." *See* 42 U.S.C. § 1320f-2(a)(1). Manufacturers of selected drugs must then make the MFP available to healthcare providers when they dispense the drugs to Medicare beneficiaries. *Id.* § 1320f-2(a)(3). Movants lack the claims data to determine MFP eligibility on the front end because pharmacies typically purchase drugs in bulk before anyone knows to whom they will be dispensed. Marsh Decl. ¶¶ 34, 52. So Movants effectuate this mandate by reimbursing dispensing entities within 14 days for the difference between the acquisition cost and the MFP, pursuant to guidance issued by the Centers for Medicare & Medicaid Services ("CMS").[2] McCarthy Decl. ¶¶ 11-12. Failure to provide the MFP discount subjects manufacturers to civil monetary penalties that can reach millions of dollars per day—or penalties of up to *ten times* the overcharge per drug unit. *See* 42 U.S.C. §§ 1320f-6(a), (c), 1320f-2(a)(5); Sharp Decl. ¶ 13.

***Program Overlap.*** A single transaction might trigger both the 340B ceiling price (under the 340B statute) and the MFP (under the IRA), as when a unit of drug eligible for IRA-discounted pricing is purchased by a 340B covered entity and dispensed to a Medicare patient. A

[2] CMS, *Medicare Drug Price Negotiation Program: Final Guidance, Implementation of Sections 1191-1198 of the Social Security Act for Initial Price Applicability Year 2028 and Manufacturer Effectuation of the Maximum Fair Price in 2026, 2027, and 2028*, at 209-10 (Sept. 30, 2025) ("2026-28 Final Guidance"), https://tinyurl.com/uf86dc2f (explaining that CMS intends the deadline to "align with the timing requirements in the Part D prompt pay rules" and create "a clear standard" for monitoring MFP effectuation).

manufacturer must then provide the lower of the two prices, but the IRA expressly provides that manufacturers "shall not be required to provide" both discounts simultaneously. 42 U.S.C. § 1320f-2(d). This process—identifying which program produces the lower price, and thus which one applies to a transaction—is "deduplication." It is purportedly the obligation of manufacturers alone.[3] And it exists for a good reason: If duplicate discounts were permitted, many manufacturers would pay more in discounts than the price of their drug. *See* Sharp Decl. ¶ 10.

Accurate deduplication is complicated and time sensitive. Manufacturers typically are not asked to offer the 340B discount until long after applying the maximum fair price. But the only effective way to deduplicate consistent with the IRA's timing provisions is by examining basic claims data—routine information identifying, among other things, the patient, provider, and prescription—before the 14-day refund deadline.[4] *See* McCarthy Decl. ¶¶ 14, 17-18; Marsh Decl. ¶¶ 40-41, 51; Scheidler Decl. ¶¶ 16, 18. Without timely information, a manufacturer would be stuck either providing both discounts, *cf.* 42 U.S.C. § 1320f-2(d), or risking exorbitant civil monetary penalties for failing to ensure the lower of the two prices is received, *id.* § 1320f-6(a).

HRSA has twice sought to mitigate the deduplication issue with a 340B rebate program that gives manufacturers claims data. HRSA's first attempt debuted in August 2025. 90 Fed. Reg. 36,165 (Aug. 7, 2025). That program would have allowed Movants to deduplicate the MFP and 340B discounts for their products subject to both 340B and the DPNP in 2026. *See* McCarthy Decl. ¶ 19. But largely the same plaintiffs as in this case sought and obtained a preliminary injunction preventing HRSA from implementing the program and then settled with the government

---

[3] *Id.* at 255 ("CMS will not, at this time, assume responsibility for nonduplication of discounts between the 340B ceiling price and MFP."); *see also id.* ("CMS is not charged with verifying or otherwise reviewing whether a particular drug claim is 340B-eligible.").

[4] *Id.* at 209-10.

within two months of filing suit. *Am. Hosp. Ass'n v. Kennedy*, 820 F. Supp. 3d 30 (D. Me. 2025). HRSA withdrew the program and this Court vacated the manufacturers' rebate model approvals. *See Am. Hosp. Ass'n v. Kennedy*, No. 2:25-cv-00600 (D. Me. Feb. 10, 2026), Dkt. 115. Movants have lacked access to claims data necessary to deduplicate consistent with the IRA, including its condensed timing requirements, and have given costly duplicate discounts. McCarthy Decl. ¶¶ 19-20; Marsh Decl. ¶ 47; *see also* Scheidler Decl. ¶¶ 14, 41-42.

After a robust comment period, HRSA announced a new Pilot Program. 91 Fed. Reg. 48,883 (Aug. 3, 2026). Using a rebate mechanism and claims data, the Pilot Program allows manufacturers to determine the proper discount and ensure compliance with the IRA's nonduplication provisions—*i.e.*, to "deduplicate" the MFP and 340B discounts. The Pilot Program will go into effect on January 1, 2027. *Id.* at 48,884. Another of AbbVie's drugs (Botox; Botox Cosmetic), BMS's drugs (Orencia), and Boehringer's drugs (Tradjenta) have been selected for negotiation of an MFP for 2028. CMS, *CMS Announces Manufacturer Participation in Third Cycle of Medicare Drug Price Negotiation* (Mar. 13, 2026), https://tinyurl.com/46c52rcv.

Movants submitted Pilot Program plans to HRSA and were approved to implement them in September 2026. *See* HRSA, 340B Rebate Model Pilot Program, https://tinyurl.com/bdhpur9n. Plaintiffs once again sued, claiming that the Pilot Program is arbitrary and capricious under the Administrative Procedure Act. They have asked this Court to enjoin "HRSA's approvals of the drug companies' plans" and enjoin HRSA "from implementing or giving effect to the Rebate Program in any way." Dkt. 1 at 140; *see also* Dkt. 2 at 21. Such order would make it impossible for Movants to accurately deduplicate consistent with the IRA's requirements, including its mandatory 14-day payment window. *See* Marsh Decl. ¶ 51. Movants thus seek to join this action to protect their interests.

## ARGUMENT

### I. Movants Are Entitled To Intervene Under Rule 24(a).

Movants qualify for intervention as of right under Rule 24(a) because they (1) timely moved to intervene, (2) have interests related to the subject of this suit, (3) face the threat that the disposition of the suit will impair their interests, and (4) are not adequately represented by an existing party. *B. Fernández & Hnos., Inc. v. Kellogg USA, Inc.*, 440 F.3d 541, 544-45 (1st Cir. 2006). Evidence of Movants' harm is critical to the Court's balancing of the equities, and that evidence can only be properly put before the Court if Movants are parties to this action. Courts in this circuit routinely grant leave to intervene under similar circumstances. *E.g.*, *NERO Int'l Holding Co. v. NEROtix Unlimited Inc.*, 585 F. Supp. 3d 152, 156-57 (D. Mass. 2022); *Canadian Nat. Ry Co. v. Montreal, Me. & Atl. Ry., Inc.*, 2010 WL 5168003, at *5-7 (D. Me. Dec. 14, 2010).

***Interest in the action.*** Movants have direct, concrete interests in their rebate plans, which HRSA has approved, and in avoiding tens of millions of dollars in duplicate discounts. *See Conservation L. Found. of New England, Inc. v. Mosbacher*, 966 F.2d 39, 43 (1st Cir. 1992). Movants' plans let them provide the correct price concession when the 340B Program and DPNP overlap, avoiding both civil penalties and duplicate discounts, because Movants cannot otherwise reliably obtain and validate 340B claims data, consistent with the IRA's 14-day refund deadline. *See* McCarthy Decl. ¶¶ 15, 23, 34. Without a rebate model allowing prospective nonduplication, they will pay both discounts in many cases. Sharp Decl. ¶ 18; McCarthy Decl. ¶¶ 19-20, 34; Marsh Decl. ¶ 51. Movants' interests in a system that allows them to avoid these losses could hardly be more direct. *See B. Fernández*, 440 F.3d at 545 ("An intervenor has a sufficient interest in the subject of the litigation where [its] contractual rights may be affected by a proposed remedy.").

***Threat to the interest.*** Plaintiffs seek to enjoin implementation of Movants' Pilot Program plans, Dkt. 2 at 21, the only available method for Movants to accurately reconcile their IRA and

340B obligations, *see* McCarthy Decl. ¶¶ 31, 33-34; Marsh Decl. ¶¶ 47, 51. By definition, "disposing of the action may as a practical matter impair or impede" Movants' "ability to protect [their] interest[s]." Fed. R. Civ. P. 24(a)(2). Indeed, "even a small threat" to a movant's interests is "ample reason for finding that [its] ability to protect [its] interest 'may' be adversely affected." *Cotter v. Mass. Ass'n of Minority L. Enf't Officers*, 219 F.3d 31, 35 (1st Cir. 2000).

***Adequacy of representation.*** Movants "need only show that representation may be inadequate," *Mosbacher*, 966 F.2d at 44, and they do so. Movants' ultimate objective does not "match[]" the government's, so no presumption of adequate representation is appropriate. *B. Fernández*, 440 F.3d at 545-46. Even if such presumption applied, it would be "lighter" than in the ordinary case, where an intervenor's purported interest is "thin and widely shared," because Movants have "a tangible and substantial stake in the outcome of this case." *Id.* at 546 (citation omitted). Nor should this Court adhere to its prior intervention ruling. For one thing, subsequent events—*e.g.*, the government's disagreement about the necessity of the Pilot Program to manufacturers—confirm the "tangible basis" for Movants' position that the government is not representing their interests. *Cf. Pub. Serv. Co. of N.H. v. Patch*, 136 F.3d 197, 207 (1st Cir. 1998). For another, the First Circuit has vacated this Court's prior order denying intervention. *See Am. Hosp. Ass'n, et al. v. Kennedy, et al.*, 2026 WL 2913956, at *2-3 (1st Cir. Sept. 25, 2026). This Court should consider the intervention question afresh.

No presumption of adequate representation applies because Movants, unlike HRSA, are the targeted regulated parties and, unlike HRSA, seek to avoid tens of millions of dollars in duplicate discounts and civil penalties. *See, e.g.*, McCarthy Decl. ¶ 20 (BMS has already lost at least $40 million in duplicate discounts); Scheidler Decl. ¶¶ 41-42 (AbbVie expects to lose $35.8 million); Marsh Decl. ¶ 47 (Boehringer average losses of $3 million each week, increasing in

2027). That distinction alone demonstrates that the presumption does not apply. A presumption exists only "where the goals of the applicants are the ***same*** as those of" a party, on the theory that the government "represent[s] adequately" a citizen's undifferentiated interest in the enforcement of valid laws. *Daggett v. Comm'n on Governmental Ethics & Election Pracs.*, 172 F.3d 104, 111 (1st Cir. 1999) (emphasis added). Because Movants are among a small group of manufacturers whose Pilot Program plan approvals are at issue in this litigation, they do not stand in the shoes of "all citizens" who support HRSA's regulatory efforts. *Cf. id.* Movants thus occupy a materially different position than the unsuccessful intervenors in cases like *Victim Rights Law Center v. Rosenfelt*, 988 F.3d 556, 561–63 (1st Cir. 2021), and *T-Mobile Northeast LLC v. Town of Barnstable*, 969 F.3d 33, 39–40 (1st Cir. 2020), who asserted only generalized interests.

Movants' interests also differ in degree and kind from those of the government. As to kind, the government's interest is in protecting its regulatory authority, even at Movants' expense. For example, while manufacturers have long contended that a rebate model is the only practical way to harmonize the 340B and DPNP obligations, the government has taken the opposite position. *Am. Hosp. Ass'n v. Kennedy*, 164 F.4th 28, 37 (1st Cir. 2026) ("[T]he federal government has indicated that manufacturers have alternative methods to address the … duplication issue."). And here, the government merely suggests that the Pilot Program may show one way to address duplicate discounts. *See* 91 Fed. Reg. at 48,889–90, 48,899. But Movants are not participating in the Pilot Program simply to help the government test a rebate model; they *need* to participate to accurately deduplicate discounts consistent with the IRA, including its condensed timeframes. *See* Scheidler Decl. Ex. D, at 9.

As to degree, Movants will oppose Plaintiffs' attempt to enjoin the Pilot Program by relying on evidence of their harms—evidence that only they can provide as "the real targets of the suit

and … the subjects of the regulatory plan." *Mosbacher*, 966 F.2d at 43. Plaintiffs seek to enjoin Movants' rebate plans. Dkt. 1 ¶¶ 197-99. And Movants—not HRSA—bear all the relevant financial risks, whereas HRSA has no direct financial stake in the Pilot Program. HRSA cannot adequately represent Movants' differentiated, private interests from a fundamentally different "standpoint." *See, e.g.*, *Animal Prot. Inst. v. Martin*, 241 F.R.D. 66, 70 (D. Me. 2007).

Experience has demonstrated that the government is not "zealously interested in upholding the validity of [its actions]"—at least with respect to Movants' unique interests. *Cf. Mass. Food Ass'n v. Mass. Alcoholic Beverages Control Comm'n*, 197 F.3d 560, 567 (1st Cir. 1999) (declining only to create a presumption of ***inadequate*** representation by regulators). The Court denied drug manufacturers' intervention motions in the first rebate program litigation, on the understanding that the government would be an adequate representative. *See Am. Hosp. Ass'n v. Kennedy*, 2025 WL 3677386, at *4–5 (D. Me. Dec. 18, 2025), *vacated and appeal dismissed as moot*, 2026 WL 2913956 (1st Cir. Sept. 25, 2026). But the government was unable to present manufacturer-specific evidence about duplicate-discount harm or operational constraints, wrongly suggested that manufacturers have other accurate mechanisms for achieving deduplication, and settled the dispute by withdrawing the first rebate program and dismissing its appeal. *See Am. Hosp. Ass'n*, 820 F. Supp. 3d at 46; *Am. Hosp. Ass'n*, 164 F.4th at 37. These decisions cost Movants tens of millions of dollars. *See* McCarthy Decl. ¶ 20; Marsh Decl. ¶ 47.

Moreover, because the government asserts complete authority over the use of rebates in the 340B context, including the ability to bar them, its approach conflicts with Movants' view that rebates are necessary. *See Novartis*, 182 F.4th at 1034 (concluding HHS must "affirmatively approve rebate models"). The government is also unlikely to underscore the operational tension between the DPNP and 340B Program and explain that without the Pilot Program, manufacturers

will face serious compliance problems. *See Mosbacher*, 966 F.2d at 44 (government's actions gave the "distinct feeling that the Secretary [was] less than wholeheartedly dedicated to opposing the [plaintiff's] aims"). As in *Cotter*, Movants seek to develop arguments that the existing parties will not. *See* 219 F.3d at 34-36. Because Plaintiffs seek relief that would make a rebate model impossible, and the government has little incentive to contend that a rebate model is necessary, Movants are permitted to defend their own interests.

In short, Movants make the "'minimal' showing" of inadequacy, so they also overcome the "lighter" presumption that applies to potential intervenors with "a tangible and substantial stake in the outcome of this case." *B. Fernández*, 440 F.3d at 545. The government does not see the Pilot Program from the "parochial" perspective of a regulated party because its "judgments are necessarily constrained by [its] view of the public welfare." *Mosbacher*, 966 F.2d at 44. HRSA thus "might change or soften [its] position" to accommodate "broader … institutional interests." *Nextel Commc'ns of Mid-Atl., Inc. v. Town of Hanson*, 311 F. Supp. 2d 142, 153 (D. Mass. 2004). And it is ultimately Movants, not the government, who will suffer duplicative price concessions or civil penalties if they cannot implement their plans. Bearing none of those costs, the government is not "narrowly focused" on Movants' interests. *Mosbacher*, 966 F.2d at 44. And given its institutional interests, the government will "behave like a stakeholder rather than an advocate." *Brennan v. N.Y.C. Bd. of Educ.*, 260 F.3d 123, 132-33 (2d Cir. 2001). The potential for "greater adverse impact" on Movants shows that the government "may not serve as an adequate proxy." *B. Fernández*, 440 F.3d at 547.

***Timeliness.*** Given that Plaintiffs filed their complaint just five days ago, this motion is timely and will not delay this action or prejudice the existing parties. *See Geiger v. Foley Hoag LLP Ret. Plan*, 521 F.3d 60, 64 (1st Cir. 2008) (motion timely when "the case had not progressed

beyond the initial stages"). Movants are prepared to adhere to the schedule this Court enters.[5]

## II. Alternatively, Intervention Is Warranted Under Rule 24(b).

In the alternative, the Court should grant permissive intervention. Fed. R. Civ. P. 24(b)(1)(B). In weighing permissive intervention, "the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." *Id.* 24(b)(3). The Court may also consider any "rationally relevant" factor, including whether applicants may "fully develop[ ] the case." *Daggett*, 172 F.3d at 113; *see also Melone v. Coit*, 100 F.4th 21, 28-29 (1st Cir. 2024). Movants' defense of their plan approvals shares common questions of law and fact with the underlying action—indeed, unless Movants are made parties, the underlying action will resolve the legality of their plans in their absence. *See Tirrell v. Edelblut*, 2025 WL 1939965, at *3 (D.N.H. July 15, 2025) (intervenors would "assist[ ] in fully developing the record and in reaching a just resolution" because they were "the ones who [we]re directly affected by the challenged laws"). Movants' "highly relevant factual perspective" as Pilot Program participants would also "significantly contribute" to this Court's understanding of issues "critical to [their] interests," but which HRSA "may not emphasize or vigorously defend." *Ass'n of Conn. Lobbyists LLC v. Garfield*, 241 F.R.D. 100, 103 (D. Conn. 2007). And their motion is timely, filed within two business days of Plaintiffs' complaint. The Court should permit intervention.

## CONCLUSION

The Court should grant the motion to intervene and waive or defer Rule 24(c)'s responsive pleading requirement.

---

[5] Movants will file their reply in support of intervention by Friday, November 13, so that this motion is ripe before the parties' requested oral argument the weeks of November 16 or November 23. *See* Dkt. 14.

Dated: October 14, 2026

Respectfully submitted,

_/s/ Paul McDonald_
Paul McDonald
Lucas Fortier
BERNSTEIN SHUR
100 Middle Street
P.O. Box 9729
Portland, ME 04104
Telephone: (207) 774-1200
Email: pmcdonald@bernsteinshur.com
lfortier@bernsteinshur.com

Matthew S. Owen*
Jessica L. Wagner*
Hank Minor*
GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, DC 20036
Telephone: (202) 955-8616
Email: mowen@gibsondunn.com
jwagner@gibsondunn.com
hminor@gibsondunn.com

*Attorneys for Proposed Intervenor-Defendants AbbVie Inc. and Pharmacyclics LLC*

William J. Gallitto, III (Maine Bar No. 4969)
Jana L. Kenney (Maine Bar No. 6159)
BERGEN & PARKINSON, LLC
144 Main Street
Saco, ME 04043
Telephone: (207) 283-1000

Susan M. Cook*
Marlan Golden*
Claire A. Rhodes*
Carly M. Heying*
HOGAN LOVELLS CADWALADER US LLP
555 Thirteenth Street, N.W.
Washington, DC 20004-1109
Telephone: (202) 637-5600
Facsimile: (202) 637-5910
Email: susan.cook@hlc.com

*Attorneys for Proposed Intervenor-Defendant Bristol-Myers Squibb Company*

Alfred C. Frawley IV (Maine Bar No. 004854)
MCCLOSKEY, MINA, CUNNIFF & FRAWLEY, LLC
12 City Center
Portland, Maine 04101
Telephone: (207) 772-6805
Fax: (207) 879-9374
Email: afrawley@lawmmc.com

Kevin F. King*
Thomas Brugato*
COVINGTON & BURLING LLP
One City Center
850 10th Street N.W.
Washington, DC 20001
Telephone: (202) 662-6000
Email: kking@cov.com
tbrugato@cov.com

*Attorneys for Proposed Intervenor-Defendant Boehringer Ingelheim Pharmaceuticals, Inc.*

**Pro hac vice certificates forthcoming*