**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MAINE**

| | |
|---|---|
| THE AMERICAN HOSPITAL ASSOCIATION, THE MAINE HOSPITAL ASSOCIATION, EASTERN MAINE MEDICAL CENTER, NATHAN LITTAUER HOSPITAL & NURSING HOME, UNITY MEDICAL CENTER, and DALLAS COUNTY MEDICAL CENTER,<br><br>*Plaintiffs*,<br>v.<br><br>ROBERT F. KENNEDY, JR., SECRETARY OF THE U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES, THOMAS J. ENGELS, ADMINISTRATOR, HEALTH RESOURCES AND SERVICES ADMINISTRATION, THE HEALTH RESOURCES AND SERVICES ADMINISTRATION, THE UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, AND THE UNITED STATES OF AMERICA,<br><br>*Defendants*. | Case No. 1:26-cv-00515-LEW |

**DECLARATION OF JUDITH SHARP**

I, Judith Sharp, hereby make this declaration in lieu of an affidavit as permitted by 28 U.S.C. § 1746. I am aware that this declaration will be filed in the United States District Court for the District of Maine, and that it is the equivalent of a statement under oath. I declare as follows in support of AbbVie Inc.'s and Pharmacyclics LLC's (collectively, "AbbVie") motion to intervene as defendants and memorandum in opposition to Plaintiffs' motion for a temporary restraining order in the above-captioned action:

**A. Background**

1. I am over the age of 21, under no disability, and competent to testify to the matters contained in this declaration.

2. I am Senior Director of IRA Navigation & Possibilities at AbbVie and have worked at AbbVie since 2014. My responsibilities include contributing to the development of AbbVie's plan to effectuate the "Maximum Fair Price" ("MFP") under the Inflation Reduction Act ("IRA"), including deduplication with 340B pricing. I am familiar with the conditions of AbbVie's participation in federal healthcare programs, such as Medicare and Medicaid, as well as its compliance with the IRA, which established the Medicare Drug Price Negotiation Program ("DPNP"), requiring the Secretary of the U.S. Department of Health and Human Services ("HHS") to set an MFP for selected drugs.

**B. The Drug Price Negotiation Program**

3. The IRA created a new price-setting program, called the DPNP. Through the DPNP, the Secretary of HHS sets the price that Medicare plans will pay for a certain number of selected drugs each year. The newly set Medicare price is the "MFP." The first set of MFPs under the DPNP just went into effect this year, on January 1, 2026.

4. A separate federal program, the 340B Program, has long required manufacturers to offer drugs to certain "covered entities" at a statutorily calculated "ceiling price." For entities entitled to purchase drugs under the 340B Program, a manufacturer must offer the lower of a selected drug's MFP and the 340B ceiling price. The IRA statute requires AbbVie to provide only the lower of the MFP and 340B ceiling price. 42 U.S.C. § 1320f-2(d). AbbVie is not required to provide both price concessions on the same unit of drug dispensed. In other words, AbbVie is not required to pay duplicate discounts. It is my understanding that the Centers for Medicare & Medicaid Services ("CMS") has declined to "assume responsibility for nonduplication of

discounts" between the 340B price and the MFP and, as such, HHS has put the responsibility for preventing duplicate discounts on manufacturers.[1]

5. For the first three years of the DPNP, CMS issued Final Guidance setting forth how manufacturers are to comply with the DPNP and provide the MFP.[2] CMS has maintained that manufacturers "may provide access to the MFP prospectively or retrospectively."[3] That is, manufacturers may either provide access to the MFP by "(1) prospectively ensuring that the price paid by the dispensing entity when acquiring the drug is no greater than the MFP" or "(2) retrospectively providing reimbursement for the difference between the dispensing entity's acquisition cost and the MFP."[4]

6. To help manufacturers administer the MFP, CMS has created the Medicare Transaction Facilitator ("MTF"). The MTF facilitates the transmission of claims data from insurance plans to manufacturers. When manufacturers provide the MFP through a refund,[5] I understand that they use claims data from the MTF to identify which medications were dispensed

---

[1] CMS, *Medicare Drug Price Negotiation Program: Final Guidance, Implementation of Sections 1191-1198 of the Social Security Act for Initial Price Applicability Year 2028 and Manufacturer Effectuation of the Maximum Fair Price in 2026, 2027, and 2028* at 255 (Sept. 30, 2025) ("IPAY 2026-28 Final Guidance"), https://tinyurl.com/uf86dc2f.

[2] *See, e.g.*, CMS, *Medicare Drug Price Negotiation Program: Final Guidance, Implementation of Sections 1191-1198 of the Social Security Act for Initial Price Applicability Year 2027 and Manufacturer Effectuation of the Maximum Fair Price in 2026 and 2027*, § 40.4 at 195-98 (Oct. 2, 2024), https://tinyurl.com/4n245pt3.

[3] IPAY 2026-28 Final Guidance at 212-15; *see also* CMS, *Medicare Drug Price Negotiation Program: Final Guidance, Implementation of Sections 1191-1198 of the Social Security Act for Initial Price Applicability Year 2027 and Manufacturer Effectuation of the Maximum Fair Price in 2026 and 2027* at 187 (Oct. 2, 2024) ("IPAY 2027 Final Guidance"), https://tinyurl.com/mrxz4hf9; CMS, *Draft Guidance on Manufacturer Effectuation of the Maximum Fair Price in 2028 under the Medicare Drug Price Negotiation Program* (July 16, 2026) ("2028 Draft Revised Guidance"), https://tinyurl.com/yxprj3u2.

[4] IPAY 2026-28 Final Guidance at 55.

[5] Cardinal Health, *Inflation Reduction Act (IRA)*, https://tinyurl.com/3wh2djjf ("Every manufacturer chose retrospective effectuation for IPAY2026.").

to MFP-eligible individuals and to refund the entities that dispensed the medications (*e.g.*, pharmacies).[6] The MTF system is composed of two key functionalities: a mandatory Data Module, which facilitates the transmission of certain data elements from Medicare Part D plan sponsors to manufacturers, and an optional Payment Module, a system through which manufacturers may transfer refund payments to dispensing entities. The MTF is a core component of implementing the DPNP, as it supports manufacturers like AbbVie in meeting their statutory obligations—including to ensure that dispensing entities are "provided access" to the MFP refund consistent with CMS guidance.[7]

7. The MTF is important because, under the IRA, a Medicare Part D plan sponsor will pay no more than the MFP (plus a dispensing fee) to a dispensing entity (*e.g.*, a pharmacy) when a Medicare Part D enrollee purchases a DPNP-selected drug. After the enrollee purchases the DPNP-selected drug, CMS requires Medicare Part D plan sponsors to provide claims data to the Drug Data Processing System ("DDPS"). Certain elements of the claims data are then transmitted to manufacturers through the MTF Data Module. Drug manufacturers are then allotted up to 14 days to process the data and provide the MTF with instructions and approvals for processing MFP refunds to the dispensing entity. Refunds are typically calculated as the difference between the dispensing entity's acquisition cost (often using the drug's wholesale acquisition cost ("WAC") as a proxy) and the MFP (which is intended to be the price that the dispensing entity ultimately recovers from the enrollee's plan).

8. It is my understanding that the MFP refund process thus far in 2026 has worked as per the timeline that CMS anticipated; AbbVie timely transmits remittance data to the MTF

---

6 IPAY 2026-28 Final Guidance at 215.

7 *See id.*

regarding the applicability of any refund. Plan sponsors have 7 days to submit claims data to CMS, and manufacturers have 14 days to transmit a refund after they receive the claims data from CMS through the MTF.

9. In addition, I have reviewed the declaration of Sean Fadale, prepared on October 8, 2026, in support of Plaintiffs' motion for a temporary restraining order. It states that the Pilot Program's "[t]en-[d]ay [p]romise [i]s [i]llusory," and bases that statement on Nathan Littauer Hospital's experience with the MTF, under which Nathan Littauer Hospital has received payment on claims "in approximately thirty to ninety days … even though the payment period is supposed to be fourteen days." Dkt. 2-4 ¶ 20. I do not understand this to be an accurate representation of how the MTF functions. Plans are required to submit claims to CMS within 7 days of receipt from a dispensing entity and manufacturers are required to make prompt payment within 14 days. It is my understanding that according to data reported by the MTF to Beacon for IPAY 2026 drugs, when a pharmacy is eligible to receive an MFP refund, that refund is on average paid to the pharmacy within 21 days from the date of dispense.[8] A minority of pharmacies have not opted into electronic funds transfer and may wait longer to receive funds because they will instead receive payment through a paper check. These timelines are contrary to the broad average of 30 to 90 days asserted in the Fadale declaration. The Fadale declaration also does not address whether the claim was initially denied within the 14-day window for manufacturers to assess whether a refund is due. It is my understanding that an MFP refund claim may be denied if a manufacturer reasonably believes the claim is subject to the 340B deduplication exception in the IRA.[9] In the

---

8 BRG, *Update on Effectuation of the Maximum Fair Price in 2026 and Outlook for 2027* at 1 (Apr. 2026), https://tinyurl.com/46ckpxaw ("BRG Update").

9 *See* IPAY 2026-28 Final Guidance at 238-40.

absence of a 340B rebate model, if a covered entity believes the claim is not subject to 340B, the covered entity must then produce evidence (such as a purchase invoice or additional data) to the manufacturer to attest that the claim is not subject to 340B pricing. This is part of a dispute resolution process that, absent a rebate model, may delay the ultimate decision of whether an MFP refund is due. I also understand that dispute escalations have been minimal.

**C. Program Overlap**

10. Accurate deduplication is impossible without access to the data proposed to be made available through the Health Resources and Services Administration's ("HRSA") 340B Rebate Model Pilot Program ("Pilot Program"). Consider, for example, a covered entity that dispenses a drug subject to both the MFP and the 340B ceiling price. If the WAC for that drug is $1,000, and the MFP is $500, a Medicare Part D plan will pay the covered entity the $500 MFP plus a dispensing fee when the covered entity dispenses the drug to a Medicare Part D enrollee. The MTF then sends elements of the claims data about that transaction to the manufacturer of the drug. Based on the data, the manufacturer must pay the covered entity (within the 14-day "prompt payment window") a "refund" that is typically the difference between the WAC and the MFP. At the same time, the 340B ceiling price for that same drug may be $250. And because covered entities generally need not seek a 340B discount within a particular period, the manufacturer will likely have provided the MFP by the time the covered entity attempts to replenish the drug at the $250 340B ceiling price, *i.e.*, to obtain a $750 discount. In that way, a manufacturer would end up providing $1,250 in discounts on a drug with a $1,000 wholesale acquisition cost: $500 to the covered entity as an MFP refund and $750 as a discount on the covered entity's replenishment order. Such duplicate discounts are contrary to the IRA statute. They are the unintentional result of the temporal gap between the application of the MFP and 340B ceiling price. I understand that

this same scenario is possible with a contract pharmacy (seeking the MFP refund) and a covered entity (placing a replenishment order).

11. Duplicate discounts are inconsistent with the IRA. When a drug transaction could qualify for both the MFP and the 340B ceiling price, the IRA requires manufacturers to provide only the lower of the MFP and 340B ceiling price. In other words, AbbVie is not required to pay duplicate price concessions on the same unit of drug—although it is my understanding that HHS has thus far put the responsibility for preventing duplicate discounts on manufacturers. The only reliable way to avoid such duplication is with access to claims data, such as the date prescribed, Rx number, fill number, quantity dispensed, and National Provider Identifier ("NPI"). But covered entities do not freely provide such claims data to manufacturers. CMS has provided a pathway for pharmacies to "voluntarily and proactively indicate on a submitted claim" that the drug was purchased at the 340B price.[10] And the MFP platform offers a supplemental process through which pharmacies can identify 340B claims. But to date, less than 0.5 percent of claims submitted have proactively identified that they are also associated with a 340B claim.[11] By comparison, analysis of Medicare Part D Prescription Drug Event data suggests that between 10 and 12 percent of claims for 2026 selected drugs are subject to 340B pricing.[12]

12. CMS is aware of the duplicate discount problem. It requires manufacturers of selected drugs to submit Maximum Fair Price Effectuation Plans ("MFP Effectuation Plans") that detail how a manufacturer will comply with the DPNP and provide access to the MFP for selected drugs. A manufacturer's MFP Effectuation Plan must also detail a process for deduplication of

---

[10] BRG Update at 2.

[11] *Id.*

[12] *Id.*

MFP and 340B discounts.[13] Any changes to that plan must be submitted to CMS. AbbVie submitted an MFP Effectuation Plan for the 2027 initial price applicability year, and Pharmacyclics previously submitted an MFP Effectuation Plan for the 2026 initial price applicability year. AbbVie's MFP Effectuation Plans set forth how AbbVie will comply with the IRA and identify the use of the Pilot Program for deduplication.

13. I understand that a drug manufacturer with a DPNP agreement that violates the requirements that CMS determines are "necessary" for program administration and compliance may be subject to fines of over one million dollars per day.[14] A manufacturer also faces civil monetary penalties up to ten times the overcharge per drug unit if the manufacturer does not timely provide the MFP refund.[15] CMS guidance has specified that a manufacturer "may meet its statutory obligation under" the IRA "to make the MFP available to dispensing entities by retrospectively transmitting payment for the difference between the dispensing entity's acquisition cost and the MFP (*i.e.*, the MFP refund amount), within the 14-day prompt MFP payment window."[16]

14. HRSA proposed a rebate model pilot program for use in 2026, but I understand that AbbVie's plan to participate in that program was halted before it became effective. With the 2026 pilot program enjoined (and then vacated), AbbVie concluded that it could not deduplicate 340B and MFP claims accurately for drugs subject to both programs, and, as a result, incurred sizeable losses.

[13] IPAY 2026-28 Final Guidance at 326-32.

[14] *Id.* at 339-40.

[15] *See* 42 U.S.C. § 1320f-6(a).

[16] IPAY 2026-28 Final Guidance at 212; *see also* 2028 Draft Revised Guidance at 11.

15. CMS permits manufacturers to offer the MFP prospectively. I understand that some covered entities have argued that drug companies can comply with the IRA and Section 340B by simply making the MFP for Medicare-negotiated drugs available prospectively. This contention is not an accurate description of manufacturers' options for two primary reasons.

16. First, prospective MFP pricing is impractical because a drug qualifies for the MFP only if it is dispensed to a Medicare Part D enrollee. When an entity purchases the drug, the manufacturer (and often the purchaser) does not yet know to whom it will be dispensed.[17] Because manufacturers do not know to whom the drug will be dispensed when it is sold to a covered entity, they cannot deduplicate the MFP from the 340B price on the front end.

17. Second, prospective MFP pricing would not solve the duplicate discount problem because the MFP and 340B price may still be requested at different times, through distinct processes. Covered entities generally need not assert that a claim is eligible for a 340B discount within a particular period, so there is rarely a practical way to determine the duplicative discount within the 14-day period in which manufacturers must provide the MFP, regardless of whether the MFP price is provided prospectively or retrospectively.[18] This problem is exacerbated by covered entities' use of contract pharmacies and the replenishment model described above to obtain the 340B price. Thus, without the Pilot Program, a covered entity may purchase a drug at the MFP on the front end and then, months or even a year later, attempt to replenish that same drug at the 340B ceiling price after the covered entity's contract pharmacy dispensed the drug to a patient of the

---

[17] Additionally, providing prospective access to the MFP requires specific documentation from manufacturers that differs from the documentation necessary to facilitate retrospective access. IPAY 2026-28 Final Guidance at 238-40 (Table 5).

[18] 2028 Draft Revised Guidance at 9 ("CMS requires that the Primary Manufacturer transmit payment of an amount that provides access to the MFP within 14 calendar days of when the MTF sends data to the Primary Manufacturer that verify the selected drug was either dispensed, furnished, or administered to an MFP-eligible individual.").

covered entity. To prevent such duplicate discounts, manufacturers must be able to identify whether a particular dispense was both MFP-eligible and subject to the 340B ceiling price. In other words, even if a manufacturer were to provide the MFP prospectively, that dispense would still have to be validated through the MTF as going to an MFP-eligible individual and the manufacturer would still need to determine if that same claim was also the subject of a request for a 340B discount.

18. It is my understanding that duplicate discounts will happen unless manufacturers can obtain claims data through the Pilot Program. Without the Pilot Program, manufacturers lack the claims data necessary to identify if a dispense subject to an MFP was purchased at the 340B ceiling price—or if a 340B replenishment order is based on drugs for which the MFP was already applied. This overlap exposes manufacturers to a risk of costly duplicate discounts and steep civil monetary penalties. Similarly, the Pilot Program reduces—although it does not eliminate—the timing gap between 340B discounts and the MFP. It requires covered entities to submit 340B rebate requests within 45 days of a dispense, rather than months or even a year later.

* * *

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 13th day of October 2026.

/s/ Judith Sharp
Judith Sharp
Declarant