# EXHIBIT 1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MAINE**

| | |
|---|---|
| THE AMERICAN HOSPITAL ASSOCIATION, THE MAINE HOSPITAL ASSOCIATION, EASTERN MAINE MEDICAL CENTER, NATHAN LITTAUER HOSPITAL & NURSING HOME, UNITY MEDICAL CENTER, and DALLAS COUNTY MEDICAL CENTER,<br><br>*Plaintiffs*,<br><br>v.<br><br>ROBERT F. KENNEDY, JR., Secretary of the U.S. Department of Health and Human Services, THOMAS J. ENGELS, Administrator, Health Resources and Services Administration, THE HEALTH RESOURCES AND SERVICES ADMINISTRATION, THE UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, and THE UNITED STATES OF AMERICA,<br><br>*Defendants*. | Case No. 1:26-cv-00515-LEW |

**DECLARATION OF JAMES C. STANSEL**
**IN SUPPORT OF PhRMA's MOTION TO INTERVENE**

I, James C. Stansel, declare under penalty of perjury that the following is true and correct to the best of my knowledge, information, and belief:

1. I am Executive Vice President, General Counsel and Corporate Secretary of Pharmaceutical Research and Manufacturers of America (PhRMA). In this role, I supervise the work of PhRMA's law department, which supports PhRMA's public policy advocacy to represent its members' interests in matters before Congress, the Executive Branch, the courts, and state legislatures and regulatory agencies.

2. I have held this position since 2016. I have personal knowledge of the facts stated herein. If called as a witness in this matter, I could and would competently testify to each of the facts set forth below.

3. PhRMA is a voluntary nonprofit association organized and existing under the laws of the State of Delaware that represents the country's leading biopharmaceutical research companies.

4. PhRMA's members are the country's leading innovative biopharmaceutical companies, which are focused on developing innovative medicines that transform lives and create a healthier world. PhRMA advocates for public policies to ensure patients can access and afford medicines that prevent, treat, and cure disease. PhRMA member companies have invested more than $900 billion in the search for new treatments and cures over the last decade, supporting nearly five million jobs in the United States.

5. PhRMA's current members are Alkermes plc.; Amgen Inc.; Astellas Pharma; AstraZeneca; Bayer Corporation; Biogen; BioMarin Pharmaceutical Inc.; Boehringer Ingelheim Pharmaceuticals, Inc.; Bristol Myers Squibb; CSL; Daiichi Sankyo, Inc.; Eisai Inc.; Eli Lilly and Company; EMD Serono; Genentech; Genmab US, Inc.; Gilead Sciences, Inc.; GSK; Incyte Corporation; Ipsen Biopharmaceuticals, Inc.; Johnson & Johnson; Kyowa Kirin, Inc.; Lundbeck LLC; Merck & Co., Inc.; Neurocrine Biosciences, Inc.; Novartis Pharmaceuticals Corporation; Novo Nordisk Inc.; Otsuka America Pharmaceutical, Inc.; Pfizer Inc.; Sanofi; Stemline Therapeutics, Inc.; Sumitomo Pharma America; Takeda Pharmaceuticals USA, Inc.; and UCB, Inc.

6. PhRMA represents its members across the country concerning legislative, political, legal, and social issues in which the biopharmaceutical industry has an interest. PhRMA serves as the industry's principal policy advocate.

7. This lawsuit involves the 340B Drug Pricing Program (340B). 340B is a federal program that requires drug manufacturers to offer to sell certain drugs to "covered entities" at or below a specified statutory price. If manufacturers do not participate in 340B, the medicines they

manufacture are not eligible for reimbursement from the federal government under Medicare Part B or Medicaid.

8. As part of my job responsibilities, I am familiar with PhRMA members' participation in 340B.

9. Many of PhRMA's member companies listed above participate in 340B. Those manufacturers provide to covered entities deeply reduced-priced drugs as part of the program. One study has found that through their participation in 340B, PhRMA's members annually provide discounts worth at least $79.5 billion. *See* Adam Fein, *The 340B Program Hit $100 Billion in 2025: Has It Become Too Big to Reform?*, Drug Channels (July 15, 2026), https://www.drugchannels.net/2026/07/the-340b-program-hit-100-billion-in.html.

10. Because PhRMA's members participate in 340B, they are directly affected by the operation of the program and by the requirements for participation. Accordingly, as a representative of its members' interests, PhRMA has a clear stake in the proper operation and application of 340B.

11. This lawsuit specifically concerns the 340B Rebate Model Pilot Program (Pilot Program), which the Health Resources & Services Administration (HRSA) announced via Federal Register notice on August 3, 2026. *See Notice Regarding 340B Rebate Model Pilot Program*, 91 Fed. Reg. 48,883 (Aug. 3, 2026).

12. The Pilot Program allows an approved group of manufacturers to effectuate 340B price reductions on specified drugs through rebates to covered entities rather than upfront discounts. As part of my job responsibilities, I am familiar with the Pilot Program.

13. To date, HRSA has reviewed and approved rebate model plans under the Pilot Program that were proposed by the following PhRMA members: Amgen, Astellas, AstraZeneca, Boehringer Ingelheim, Bristol Myers Squibb, GSK, Merck, and Pfizer. *See* HRSA, 340B Rebate Model Pilot Program: Approved manufacturer 340B Rebate Model plans, https://www.hrsa.gov/opa/340b-model-pilot-program.

14. These manufacturers are eligible to participate in the Pilot Program, as presently designed, because each has one or more drugs that has been selected for the Inflation Reduction Act's (IRA) Medicare Drug Price Negotiation Program. The IRA requires covered manufacturers to offer a "maximum fair price" (MFP)—another statutorily mandated price reduction—on certain medicines. But the law explicitly states that a manufacturer need not provide both the MFP and 340B price reductions on the same prescription. And a manufacturer that fails to provide accurate pricing could face civil monetary penalties. *See* 42 U.S.C. § 1320f-6(a), (c).

15. The PhRMA members identified in Paragraph 13 above sought approval to use rebate models in the Pilot Program to assist in compliance with the IRA and to avoid other 340B duplicate discounting. Under the manufacturers' rebate models approved by HRSA, manufacturers will pay rebates to covered entities for 340B-eligible prescriptions within 10 days of receiving basic claims data that confirms each prescription's eligibility for the 340B discount. *See* 91 Fed. Reg. at 48,903.

16. The PhRMA members whose rebate programs were approved for the Pilot by HRSA have been preparing to implement their rebate programs. I understand that these preparations have required significant expenditures of time and money in designing the rebate model systems and applying for approval from HRSA.

17. The Pilot Program begins on January 1, 2027. The approved manufacturers likewise have obligations to offer the MFP on select drugs under the IRA beginning not later than January 1, 2027.

18. Absent the Pilot Program, PhRMA's members stand to lose billions of dollars. Berkeley Research Group has estimated that manufacturers could pay $5.2 billion in duplicate 340B and MFP discounts in 2027 alone. *See* Berkeley Research Group*, Update on Effectuation of the Maximum Fair Price in 2026 and Outlook for 2027* at 2 (April 2026), https://media.thinkbrg.com/wp-content/uploads/2026/05/06130328/Effectuation-of-the-Maximum-Fair-Price-in-2026-and-Outlook-to-2027_5.6.26.pdf. In a prior report, Berkeley

Research Group noted that "every dispense subject to a duplicate discount will represent a financial loss to the manufacturer ... because the 340B discount and the MFP discount, when added together, exceed the drug's list price." Berkeley Research Group, *Implications for Duplication with the 340B Channel* at 2 (Oct. 2024), https://media.thinkbrg.com/wp-content/uploads/2024/10/23161214/BRG-Implications-for-Duplication-with-_the-340B-Channel-2024.pdf.

19. In addition to these members selected for the Pilot Program, other PhRMA members have an interest in the Pilot.

20. As the agency explained, "HRSA will use data collected through the Pilot, including rebate submissions, denials, and dispute outcomes, to more effectively prevent duplicate discounts relative to existing mechanisms and to inform future policy considerations related to program integrity and compliance." 91 Fed. Reg. at 48,890. The Pilot will "allow[] for the evaluation and adjustment of workflows and data exchange mechanisms based on actual experience prior to broader application." *Id*. at 48,893.

21. Other PhRMA members who participate in the 340B Program, including those whose drugs have previously been selected for MFP negotiation or may be subjected to MFP obligations in later years, are strongly interested in pursuing rebate models in the future. *See* PhRMA, Request for Information: 340B Rebate Model Pilot Program and Request for Public Comment at 3 (April. 20, 2026), https://cdn.aglty.io/phrma/global/resources/import/pdfs/Rebate%20Notice%20PhRMA%20Comments_FINAL.pdf (urging that "a rebate model should be an option for all 340B drug purchases immediately, without first limiting implementation to a pilot").

22. On behalf of these members, PhRMA has advocated that HRSA "work toward a broader rebate model that goes beyond IRA selected drugs, as operational and program integrity benefits of such a rebate approach apply broadly across the 340B program." *Id.* As a result, these

members too have a strong interest in ensuring that the agency will be able to use the Pilot Program to review and study the efficacy of rebate models.

23. The agency's ability to study rebate models has particular practical importance because HRSA has adopted a legal position that a manufacturer may not use a rebate mechanism to deliver the 340B ceiling price without prior approval from HRSA, and to date courts have sustained HRSA's position on that point. *See, e.g., Novartis Pharmaceuticals Corporation v. Kennedy*, 182 F.4th 1027, 1038 (D.C. Cir. 2026). Those rulings underscore the importance for PhRMA's members that HRSA be able to obtain real-world information about the operation of rebate models.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. *See* 28 U.S.C. § 1746.

Executed on: October 13, 2026

/s/ James C. Stansel
James C. Stansel
Declarant