# EXHIBIT A

*RFI: 340B Rebate Model Pilot Program*,

91 Fed. Reg. 7,287 (Feb. 17, 2026)

Line 3 of the table FDIC expects no entities to file but has kept that line item with 0 burden in case needed for future IC renewal cycle.

*General Description of Collection:* When a bank fails, the FDIC must provide depositors insured funds ''as soon as possible'' after failure while also resolving the failed bank in the least costly manner. The 12 CFR part 370 facilitates prompt payment of FDIC insured deposits when large insured depository institutions fail. The rule requires insured depository institutions that have two million or more deposit accounts (covered institutions), to maintain complete and accurate data on each depositor's ownership interest by right and capacity for all of the covered institution's deposit accounts. The covered institutions are required to develop the capability to calculate the insured and uninsured amounts for each deposit owner, by ownership right and capacity, for all deposit accounts. This data would be used by the FDIC to make timely deposit insurance determinations in the event of a covered insured depository institution's failure. There is no change in the method or substance of the collection. The decrease of 42,483 hours from 52,652 hours in 2023 to the current estimate of 10,169 hours is due the elimination of the implementation burden for the Highest Complexity covered insured depository institutions (IDIs) and the reduction in the times per response.

### Request for Comment

*Comments are invited on:* (a) Whether the collection of information is necessary for the proper performance of the FDIC's functions, including whether the information has practical utility; (b) the accuracy of the estimates of the burden of the information collection, including the validity of the methodology and assumptions used; (c) ways to enhance the quality, utility, and clarity of the information to be collected; and (d) ways to minimize the burden of the collection of information on respondents, including through the use of automated collection techniques or other forms of information technology. All comments will become a matter of public record.

Federal Deposit Insurance Corporation.

Dated at Washington, DC, on February12, 2026.

**Jennifer M. Jones,**

*Deputy Executive Secretary.*

[FR Doc. 2026–03082 Filed 2–13–26; 8:45 am]

BILLING CODE 6714–01–P

## FEDERAL MARITIME COMMISSION

**[Docket No. 26–03]**

### Gator Fabrication Technology, LLC, Complainant v. Flador Global Logistics a/k/a Flador Global Uluslararasi Taşimacilik Loj.Diştic Ltd.Şti and NTG Air & Ocean, LLC, Respondents; Notice of Filing of Complaint and Assignment

Notice is given that a complaint has been filed with the Federal Maritime Commission (the ''Commission'') by Gator Fabrication Technology, LLC (the ''Complainant'') against Flador Global Logistics a/k/a Flador Global Uluslararasi Taşimacilik Loj.Diştic Ltd.Şti and NTG Air & Ocean, LLC (collectively, the ''Respondents''). Complainant states that the Commission has jurisdiction over the complaint pursuant to the Shipping Act, 46 U.S.C. 41301, and over Respondents as having ''acted as ocean transportation intermediaries or agents of ocean transportation intermediaries.''

Complainant is a limited liability company and shipper, with its principal place of business in Port Orange, Florida.

Complainant identifies Respondent Flador Global Logistics a/k/a Flador Global Uluslararasi Taşimacilik Loj.Diştic Ltd.Şti as having acted as an ocean transportation intermediary and non-vessel-operating common carrier with a place of business in İzmir, Türkiye.

Complainant identifies Respondent NTG Air & Ocean, LLC as a licensed ocean transportation intermediary with a place of business in Franklin Square, New York.

Complainant alleges that Respondents violated 46 U.S.C. 41102(c) and (d); 41104(a)(10) and (14); and 46 CFR 545.5. Complainant alleges these violations arose from Respondents withholding cargo, imposing detention charges, and asserting a maritime lien in order to coerce payment on an unrelated shipment, and other acts and omissions of Respondents.

An answer to the complaint must be filed with the Commission within 25 days after the date of service.

The full text of the complaint can be found in the Commission's electronic Reading Room at *https://www2.fmc.gov/readingroom/proceeding/26-03/.* This proceeding has been assigned to the Office of Administrative Law Judges. The initial decision of the presiding judge shall be issued by February 12, 2027, and the final decision of the Commission shall be issued by August 26, 2027.

(Authority: 46 U.S.C. 41301; 46 CFR 502.61(c))

Served: February 12, 2026.

**David Eng,**

*Secretary.*

[FR Doc. 2026–03076 Filed 2–13–26; 8:45 am]

BILLING CODE 6730–02–P

## DEPARTMENT OF HEALTH AND HUMAN SERVICES

### Health Resources and Services Administration

### Request for Information: 340B Rebate Model Pilot Program

**AGENCY:** Health Resources and Services Administration (HRSA), Department of Health and Human Services.

**ACTION:** Notice, request for Information.

**SUMMARY:** The Health Resources and Services Administration (HRSA) administers section 340B of the Public Health Service Act (PHS Act), referred to as the ''340B Drug Pricing Program'' or the ''340B Program.'' HRSA is issuing this Request for Information (RFI) to gather input from interested parties regarding the potential use of rebates to effectuate the ceiling price under the 340B Program, including the standards and procedures that should govern the approval of manufacturer rebate plans and the impacts on all stakeholders.

This RFI seeks comments on whether HRSA should implement a rebate model under the 340B Program and how best to operationalize any such rebate framework for stakeholders. The information collected through this RFI will assist HRSA in evaluating the operational, financial, and access to drugs for patients of a rebate model on covered entities, manufacturers, and other stakeholders across the drug supply chain.

**DATES:** Comments on this notice should be received no later than March 19, 2026.

**ADDRESSES:** Electronic comments should be submitted through the *Federal eRulemaking Portal: https://www.regulations.gov.* Follow the instructions on the website for submitting comments. Include the HHS Docket No. HRSA–2026–03042 in your comments. All comments received will be posted without change to: *http://www.regulations.gov.* Please do not include any personally identifiable or confidential business information you

do not want publicly disclosed. Any proprietary information on comments will not be publicly posted.

We encourage commenters to include supporting facts, research, and evidence in their comments. When doing so, commenters are encouraged to provide citations to the published materials referenced, including active hyperlinks. Likewise, commenters who reference materials which have not been published are encouraged to upload relevant data collection instruments, data sets, and detailed findings as a part of their comment. Providing such citations and documentation will assist us in analyzing the comments.

**FOR FURTHER INFORMATION CONTACT:** Chantelle Britton, Director, Office of Pharmacy Affairs (OPA), Office of Special Health Initiatives, HRSA, 5600 Fishers Lane, Mail Stop 10W29, Rockville, MD 20857; email: *340Bpricing@hrsa.gov;* telephone: 301–594–4353.

**SUPPLEMENTARY INFORMATION:**

## I. Background

Section 340B of the PHS Act entitled ''Limitation on Prices of Drugs Purchased by Covered Entities,'' was created under section 602 of Public Law 102–585, the ''Veterans Health Care Act of 1992,'' and codified at 42 U.S.C. 256b. The 340B Program is intended to enable covered entities ''to stretch scarce Federal resources as far as possible, reaching more eligible patients and providing more comprehensive services.'' H.R. Rep. No. 102–384(II), at 12 (1992). The Secretary of Health and Human Services (Secretary) has delegated the authority to administer the 340B Program to the HRSA Administrator, who in turn delegated this authority to the Office of Pharmacy Affairs, within HRSA, which oversees the 340B Program. Eligible covered entity types are defined in section 340B(a)(4) of the PHS Act, as amended. Section 340B(a)(1) of the PHS Act instructs HHS to enter into pharmaceutical pricing agreements [i] with manufacturers of covered outpatient drugs. Currently, there are approximately 14,000 covered entities participating in the Program and 800 drug manufacturers. In 2024 covered entities purchased $81.4 Billion of covered outpatient drugs under the Program. Under section 1927(a)(5)(A) of the Social Security Act, a manufacturer must enter into an agreement with the Secretary that complies with section 340B of the PHS Act ''[i]n order for payment to be available under section 1903(a) or under part B of title XVIII of the Social Security Act for covered outpatient drugs of a manufacturer.'' When a drug manufacturer signs a pharmaceutical pricing agreement, it agrees that the prices charged for covered outpatient drugs to covered entities will not exceed statutorily defined 340B ceiling prices. 340B ceiling prices are based on quarterly pricing reports that manufacturers provide to the Secretary through the Centers for Medicare & Medicaid Services (CMS) and are calculated and verified by HRSA.

In 2024, HRSA began receiving inquiries directly from manufacturers seeking to unilaterally implement different proposed rebate models for the 340B Program, which manufacturers stated was, primarily to limit the availability to maximum fair price (MFP) to 340B covered entities consistent with the nonduplication provision of the Medicare Drug Price Negotiation Program [ii] (MDPNP) and to facilitate other aims such as the prevention of 340B-Medicaid duplicate discounts and diversion. While the manufacturers' different proposals varied in terms of their scope and how they would be operationalized, the proposals all required that, under a rebate model, a covered entity would order the drug at a higher price and would then receive a rebate that reflects the difference between that higher initial price and the discounted 340B price, a departure from the way that the 340B Program has traditionally operated as an up-front discount program (*i.e.,* a covered entity receives the discounted 340B price at the time of purchase).

Section 340B(a)(1) of the PHS Act states, ''[t]he Secretary shall enter into an agreement with each manufacturer of covered outpatient drugs under which the amount required to be paid (taking into account any rebate or discount, as provided by the Secretary) to the manufacturer for [certain] covered outpatient drugs . . . purchased by a covered entity . . . does not exceed [designated prices].'' In response to manufacturers' inquiries, HRSA made clear that implementing a rebate model proposal without prior Secretarial approval would violate section 340B(a)(1) of the PHS Act.

In light of the significant feedback received both from manufacturers and covered entities, and Congressional concern regarding the shift from an upfront discount to a rebate model, HRSA became interested in testing the merits and shortcomings of a rebate model, including whether it would be beneficial to manufacturers participating in the MDPNP as well as to 340B program integrity efforts relating to the prevention of 340B Medicaid duplicate discounts and diversion. HRSA sought a balanced and measured approach to allow eligible manufacturers to implement rebate models, at the Secretary's direction and discretion, within certain parameters that would cause minimal impact on 340B covered entities.

Therefore, on August 1, 2025, HRSA published a **Federal Register** notice titled ''340B Program Notice: Application Process for the 340B Rebate Model Pilot Program,'' 90 FR 36,163 (August 1, 2025). Recognizing that a rebate model would shift how the 340B Program has operated for over 30 years, HRSA invited manufacturers that met specific criteria to voluntarily participate in the 340B Rebate Model Pilot Program. A technical correction extended the public comment period to September 8, 2025, 90 FR 38,165 (August 7, 2025). HRSA received 1,243 public comments from stakeholders, including covered entity and manufacturer trade organizations, individual covered entities, and pharmaceutical manufacturers.

Covered entities filed suit on December 1, 2025, to enjoin implementation of the rebate pilot. In accordance with the December 29, 2025, order of the U.S. District Court for the District of Maine in *American Hospital Association et al.* v. *Kennedy et al.,* No. 25-cv-600 (D. Me.), HRSA paused implementation of the 340B Rebate Model Pilot Program for all covered entities and the nine manufacturers approved to participate in the pilot.

HRSA is now requesting comments from stakeholders to further evaluate the potential benefits and costs of a rebate model, among other topics. HRSA is issuing this RFI to seek comments from stakeholders across the continuum of the drug supply chain in order to gather information on how a rebate model would impact covered entities, manufacturers, wholesalers, State Medicaid Agencies, pharmacies, the Federal Government, and other stakeholder groups. By issuing this RFI, HRSA is undertaking a methodical and deliberate approach to assess whether to implement a potential 340B Rebate Model Pilot Program consistent with its

[i] OMB Number: 0915–0327

[ii] Maximum Fair Price refers to the negotiated price under the Medicare Drug Price Negotiation Program (Negotiation Program). See 42 U.S.C. 1320f(c)(2). Under the MDPNP ''nonduplication'' provision, manufacturers that agree to a maximum fair price are not required to provide a covered entity access to the negotiated maximum fair price under that agreement if the drug is also subject to a 340B agreement and the 340B ceiling price is lower than the maximum fair price. 42 U.S.C. 1320f–2(d).

statutory authority. Likewise, HRSA commits to analyzing the comments received prior to pursuing the implementation of a potential 340B Rebate Model Pilot Program.

HRSA is inviting comments on a range of issues, including:

• administrative, operational, financial, and medication access concerns in connection with rebate models;

• reliance interests in continuing to obtain the 340B ceiling prices through upfront discounts and whether such reliance interests are reasonable in light of the Secretary's express statutory authority to provide for discounts via ''rebate or discount;''

• potential cash-flow impacts; and

• proposed alternatives and scope-limiting measures to inform a rebate pilot design, including safeguards to promote the integrity of the 340B Program, and avoid duplicate discounts, as well as consistency with the MDPNP nonduplication provision.

In addition, HRSA seeks input on how to:

• appropriately balance stakeholder concerns regarding implementation of a rebate model against the agency's goal of testing rebates in the 340B Program;

• gather empirical data on the effectuation of the ceiling price through use of rebates;

• generate data relevant to other Federal health care programs, including the MDPNP; and

• improve transparency and inform future policy decisions.

With the information collected from this RFI, HRSA will evaluate if a potential 340B Rebate Model Pilot Program is in the public's interest and, if so, determine a viable implementation strategy, consistent with the 340B statute.

## II. Request for Comments

The purpose of this RFI is to obtain information and public comments on the standards and procedures by which HRSA should consider implementation of a rebate model under the 340B Program. All comments received before the close of the comment period are available for viewing by the public, including any personally identifiable or confidential business information that is included in a comment. We post all comments received before the close of the comment period on the following website as soon as possible after they have been received: *http://www.regulations.gov.* Follow the search instructions on that website to view public comments. HRSA will not post on *Regulations.gov* public comments that make threats to individuals or institutions or suggest that the individual will take actions to harm the individual. HRSA continues to encourage individuals not to submit duplicative comments. We will post acceptable comments from multiple unique commenters even if the content is identical or nearly identical to other comments.

HRSA is seeking input to ensure that it considers all aspects of the problem and to ensure a fair and transparent comment process for all stakeholders. HRSA invites comments on all aspects of a rebate pilot program implementation under the 340B Program, but specifically seeks comments on the targeted areas below:

### *1. Costs to Covered Entities*

a. Current Administrative Costs Under the Upfront 340B Discount

i. Provide the total number of 340B transactions processed by your organization during the most recent fiscal year.

ii. Describe your current administrative costs, including costs to third parties (*e.g.,* contract pharmacies) related to 340B Program operations and compliance.

iii. Identify any key cost drivers (*e.g.,* staffing, IT systems, third-party vendors, compliance activities, labor hours) for current administrative costs.

b. Administrative Costs Under a Potential 340B Rebate Model Pilot Program

i. Estimate the incremental administrative and operational costs your organization would incur under a 340B Model Rebate Pilot Program, distinguishing between one-time startup costs and ongoing costs. These figures can be measured in terms of hours to complete the activities or in dollar amounts in the aggregate. In addition, the estimation can include administrative and operational costs associated with filing rebate requests for the drugs selected for MFP under MDPNP.

ii. Describe the methodology and assumptions used to develop these estimates.

iii. Specify the activities or functions these incremental costs would cover (*e.g.,* claims processing, data submission, reconciliation, audit support) and what, if any, effect the change of some drugs to a rebate model would have on current administrative costs under the upfront 340B discount.

iv. If a potential 340B Rebate Model Pilot Program were structured so as to offset these administrative and operational costs, how could that be achieved and how could such an offset be accurately quantified?

v. Comment on the impact of these incremental costs under your current operations.

c. Staffing Impacts Under a Potential 340B Rebate Model Pilot Program

i. Indicate whether implementation of a potential 340B Rebate Model Pilot Program would require additional full-time employees or would cause current medical provider full-time employees to reallocate work hours from medical care to perform administrative functions (quantifying wherever possible).

ii. If yes, identify the anticipated number of additional full-time employees; describe their roles, responsibilities, and functions; and indicate whether the FTEs would be temporary or permanent.

d. Systems and Infrastructure for Implementation of a Potential 340B Rebate Model Pilot Program

i. Describe any new or modified IT systems, software, or data infrastructure that would be required to implement a potential 340B Rebate Model Pilot Program.

ii. Provide estimated costs for system development, procurement, maintenance, or integration that would be required to implement a potential 340B Rebate Model Pilot Program and specify whether any such costs would be one-time or recurring.

e. Other Anticipated Costs or Impacts of a Potential 340B Rebate Model Pilot Program

i. Discretely identify any additional costs to your organization associated with implementation of a potential 340B Rebate Model Pilot Program not otherwise captured above (*e.g.,* legal review, training, consulting services, reduction in services offered, and specify whether these costs are one-time or recurring.

ii. Identify any organization-specific factors that could impact your organization's ability to participate in a potential 340B Rebate Model Pilot Program (*e.g.,* rural, small business, community health center).

iii. Identify any specific impacts on access to drugs for patients that may occur as a result of a potential 340B Rebate Model Pilot Program.

### *2. Payment Timing and Potential Cash Flow Impacts for Covered Entities*

a. Describe with specificity whether payment timing (*e.g.,* within ten calendar days of submission of a complete claim) under a potential 340B Rebate Model Pilot Program would

affect your cash flow, including any financial risks to your organization.

b. Describe the typical payment terms under your current wholesaler contracts for 340B drugs, including the number of days allowed for payment, and whether those payment terms differ for non-340B drugs.

i. Identify any prompt payment incentives or discounts currently offered by drug wholesalers for early payment and the timeframes associated with those incentives.

ii. State the average number of calendar days within which your organization typically remits payment under these contracts.

c. Describe with specificity whether a rebate-based payment model would alter payment timing compared to current drug wholesaler arrangements, and indicate whether alternative payment arrangements could mitigate any potential impacts of such a rebate-based payment.

d. A potential 340B Rebate Model Pilot Program could require that all rebates be paid to the covered entity (or denied, with documentation in support) within 10 calendar days of data submission. Describe ways that a potential 340B Rebate Model Pilot Program could be structured to ensure that manufacturers adhere to such a requirement.

e. Describe other ways that a potential 340B Rebate Model Pilot Program could be structured to address payment timing and potential cashflow impacts for covered entities.

*3. Rebate Denials*

a. Under a potential 340B Rebate Model Pilot Program the acceptable grounds for a manufacturer denial of a covered entity rebate request could be limited (for example, limited to denials where a 340B rebate was provided to another covered entity on the same claim) and the manufacturer could be required to provide the covered entity with the rationale and specific documentation for reasons claims are denied. Explain whether your organization believes more specific guardrails should be built into a potential 340B Rebate Model Pilot Program to ensure that denials are limited to appropriate circumstances.

b. Describe what (if any) standard process elements should be required for rebate denials under a potential 340B Rebate Model Pilot Program, including template forms and timeline for adjudications of improper denials.

*4. Data Collection by Covered Entities*

a. Describe how your organization currently collects, maintains, and retains data related to 340B Program participation, including whether third-party vendors are used to carry out some or all of these activities.

b. Identify current measures to ensure data accuracy, completeness, and consistency (*e.g.,* validation checks, reconciliations, audits).

c. Describe whether a potential 340B Rebate Model Pilot Program would change current data collection activities and whether any such changes would be one-time or ongoing.

d. Describe the specific pharmacy and medical claims data elements that should comprise a potential 340B Rebate Model Pilot Program (at both contract pharmacies and in-house pharmacies); whether such data elements are currently available or are readily available; the source(s) for such data; and whether such data is already being furnished to existing third parties.

e. Provide any recommendations for ensuring a potential 340B Rebate Model Pilot Program has the appropriate guardrails in place to mitigate any privacy and security concerns related to patient information and data submission, including any agreements that may be required by third parties.

5. Manufacturer Efforts to Avoid Duplicate Discounts

a. Describe your organization's practices and procedures prior to January 1, 2026, to avoid paying both 340B discounts and Medicaid rebates on the same drug dispense, including data collection and record-maintenance practices.

b. Describe any operational or administrative changes implemented by your organization since January 1, 2026, to avoid paying 340B discounts on drug dispenses subject to a MFP under the MDPNP, including any changes to data collection or record-maintenance practices.

c. Describe your organization's experience since January 1, 2026, with identifying drug dispenses to a covered entity for which your organization did not provide access to the MFP under the non-duplication provisions of the MDPNP.

d. Identify any challenges encountered (*e.g.,* data availability, claim identification, timing mismatches) in identifying potential duplicate discounts under 340B and CMS payment programs (*e.g.,* Medicare and Medicaid).

e. Identify the minimum data elements you believe are necessary for a manufacturer to identify potential duplicate discounts under 340B and CMS payment programs and the potential for the 340B Rebate Model Pilot Program to be an additional or alternative source for those data elements.

6. Required Reporting

a. What specific data should manufacturers be required to submit (and to what frequency) for HRSA's review to ensure compliance with a potential 340B Rebate Model Pilot Program?

b. What specific manufacturer data should HRSA share publicly (and to what frequency) as a potential 340B Rebate Model Pilot Program progresses?

c. What should be the frequency and duration of manufacturer data to support the assessment of a potential 340B Rebate Model Pilot Program?

7. 340B Program Integrity and Other Potential Benefits of a Rebate Pilot

a. Explain whether and how a potential 340B Rebate Model Pilot Program would affect the integrity of the 340B program.

b. Explain whether a rebate-based model would:

i. Assist manufacturers in their efforts to avoid paying duplicate discounts under 340B and CMS payment programs;

ii. Reduce diversion or improper claims; and

iii. Increase pricing transparency across stakeholders.

c. Provide any recommendations for improving data collection and reporting to strengthen the 340B Program's integrity while minimizing administrative burden.

d. Describe any other potential benefits (*e.g.,* transparency, audit compliance) of a 340B Rebate Model Pilot Program to participants in the 340B Program and to what extent these benefits outweigh any potential costs.

## III. Collection of Information Requirements

Please note, this is an RFI only. In accordance with the implementing regulations of the Paperwork Reduction Act of 1995 (PRA), specifically 5 CFR 1320.3(h)(4), this general solicitation is exempt from the PRA. Facts or opinions submitted in response to general solicitations of comments from the public, published in the **Federal Register** or other publications, regardless of the form or format thereof, provided that no person is required to supply specific information pertaining to the commenter, other than that necessary for self-identification, as a condition of the agency's full consideration, are not generally considered information collections and therefore not subject to the PRA. The

paperwork burden associated with a potential 340B Rebate Model Pilot program shall be accounted for under an information collection request submitted to OMB and approved in keeping with the PRA prior to pursuing the implementation of a potential 340B Rebate Model Pilot.

This RFI is issued solely for information and planning purposes; it does not constitute a request for proposals, applications, proposal abstracts, or quotations. This RFI does not commit the U.S. Government to contract for any supplies or services or make a grant award. Further, HRSA is not seeking proposals through this RFI and will not accept unsolicited proposals. Respondents are advised that the U.S. Government will not pay for any information or administrative costs incurred in response to this RFI; all costs associated with responding to this RFI will be solely at the interested party's expense. In addition, HRSA will not respond to questions related to policy issues outside of the scope of a potential 340B Rebate Model Pilot Program raised in this RFI.

HRSA will actively consider all input as we develop future policy. This RFI should not be construed as a commitment or authorization to incur cost for which reimbursement would be required or sought. All submissions become U.S. Government property and will not be returned. In addition, HRSA shall publicly post the public comments received in their entirety.

**Thomas J. Engels,**

*Administrator.*

[FR Doc. 2026–03042 Filed 2–13–26; 8:45 am]

BILLING CODE P

## DEPARTMENT OF HEALTH AND HUMAN SERVICES

### Privacy Act of 1974; System of Records

**AGENCY:** Office for Civil Rights (OCR), Department of Health and Human Services (HHS).

**ACTION:** Notice of a modified system of records.

**SUMMARY:** In accordance with the Privacy Act of 1974, as amended, the Department of Health and Human Services (HHS) is partially modifying an existing system of records maintained by the Office for Civil Rights (OCR), ''Program Information Management System (PIMS),'' System No. 09–90–0052. The modifications include changing the system of records name to ''HHS Civil Rights and Health Information Privacy Program Records'' and affect only certain sections of the System of Records Notice (SORN), so HHS is not republishing the SORN in full. The system of records contains records about individual members of the public who submit or are named or otherwise involved in civil rights, conscience and religious freedom, and health information privacy-related complaints received by and compliance reviews conducted by OCR, and individuals who submit reports to OCR about breaches of unsecured protected health information (PHI) experienced by covered entities and business associates subject to the Health Insurance Portability and Accountability Act (HIPAA) Privacy, Security, Breach Notification, and Enforcement Rules. OCR is modifying it to include information that programs subject to 42 CFR part 2 (''Part 2'') (and, as applicable, a qualified service organization on a Part 2 program's behalf) report to the Secretary with respect to a breach of unsecured substance use disorder (SUD) patient records maintained by a Part 2 program (''Part 2 records'') and complaints and compliance reviews involving potential violations of Part 2.

**DATES:** The modified system of records is effective upon publication, subject to a 30-day period in which to comment on the modifications. Submit any comments by March 19, 2026.

**ADDRESSES:**

• *Federal eRulemaking Portal:* You may submit electronic comments at *http://www.regulations.gov* by searching for the Docket ID number [DOCKET ID]. Follow the instructions at *http://www.regulations.gov* for submitting electronic comments. Attachments should be in Microsoft Word or Portable Document Format (PDF).

• *Regular, Express, or Overnight Mail:* You may mail written comments to the following address only: U.S. Department of Health and Human Services, Office for Civil Rights, Attention: OCR PIMS SORN, Hubert H. Humphrey Building, Room 509F, 200 Independence Avenue SW, Washington, DC 20201. Please allow sufficient time for mailed comments to be timely received in the event of delivery or security delays.

Please note that comments submitted by fax or email and those submitted after the comment period will not be accepted.

*Inspection of Public Comments:* All comments received by the accepted methods and due date specified above may be posted without change to content to *https://www.regulations.gov,* which may include personal information provided about the commenter, and such posting may occur after the closing of the comment period. However, the Department may redact certain non-substantive content from comments or attachments to comments before posting, including: threats, hate speech, profanity, sensitive health information, graphic images, promotional materials, copyrighted materials, or individually identifiable information about a third-party individual other than the commenter. In addition, comments or material designated as confidential or not to be disclosed to the public will not be accepted. Comments may be redacted or rejected as described above without notice to the commenter, and the Department will not consider any redacted or rejected content that would not be made available to the public as part of the administrative record.

*Docket:* For complete access to background documents or posted comments, go to *https://www.regulations.gov* and search for Docket ID number [DOCKET ID].

**FOR FURTHER INFORMATION CONTACT:** General questions about the modified system of records may be submitted to Harold Henderson, Records Officer, Strategic Planning Division, Office for Civil Rights, 200 Independence Ave. SW—Room 509F, Washington, DC 20201. Email address: *OCRmail@hhs.gov.*

**SUPPLEMENTARY INFORMATION:** System of records 09–90–0052, being renamed ''HHS Civil Rights and Health Information Privacy Program Records,'' is used by OCR staff and consists of an electronic repository of information and documents about individual members of the public who submit or are named or otherwise involved in civil rights, conscience and religious freedom, and health information privacy-related complaints received by and compliance reviews conducted by OCR and individuals who submit reports to OCR about breaches of unsecured protected health information (PHI) experienced by HIPAA covered entities and their business associates. The scope of individuals whose information is contained in OCR's repository includes, but is not limited to, those who meet the definition of individuals in the Privacy Act or the HIPAA Rules; however, this system of records notice applies to individuals as defined in the Privacy Act. OCR uses the system of records to manage documents and information related to OCR's civil rights and health information privacy authorities and activities.

In February 2024, HHS published a final rule, Confidentiality of Substance

during the regulatory review period. To meet its burden, the petition must comply with all the requirements of § 60.30, including but not limited to: must be timely (see **DATES**), must be filed in accordance with § 10.20, must contain sufficient facts to merit an FDA investigation, and must certify that a true and complete copy of the petition has been served upon the patent applicant. (See H. Rept. 857, part 1, 98th Cong., 2d sess., pp. 41–42, 1984.) Petitions should be in the format specified in 21 CFR 10.30.

Submit petitions electronically to *https://www.regulations.gov* at Docket No. FDA–2013–S–0610. Submit written petitions (two copies are required) to the Dockets Management Staff (HFA–305), Food and Drug Administration, 5630 Fishers Lane, Rm. 1061, Rockville, MD 20852.

**Grace R. Graham,**

*Deputy Commissioner for Policy, Legislation, and International Affairs.*

[FR Doc. 2026–03851 Filed 2–25–26; 8:45 am]

**BILLING CODE 4164–01–P**

---

## DEPARTMENT OF HEALTH AND HUMAN SERVICES

### Health Resources and Services Administration

### Request for Information: 340B Rebate Model Pilot Program Extension

**AGENCY:** Health Resources and Services Administration (HRSA), Department of Health and Human Services.

**ACTION:** Notice of extension for the comment period for the Request for Information: 340B Rebate Model Pilot Program (91 FR 7287).

**SUMMARY:** The Health Resources and Services Administration (HRSA) is extending the comment period for Request for Information: 340B Rebate Model Pilot Program from 30 days to 60 days. The change will provide stakeholders additional time to submit meaningful comments for HRSA's review in evaluating operational, financial, and potential impacts on access to drugs for patients under a rebate model.

**DATES:** Comments on this notice should be received no later than April 20, 2026.

**FOR FURTHER INFORMATION CONTACT:** Chantelle Britton, Director, Office of Pharmacy Affairs (OPA), Office of Special Health Initiatives, HRSA, 5600 Fishers Lane, Mail Stop 10W29, Rockville, MD 20857; email: *340Bpricing@hrsa.gov;* telephone: 301–594–4353.

**SUPPLEMENTARY INFORMATION:** None.

**Thomas J. Engels,**

*Administrator.*

[FR Doc. 2026–03838 Filed 2–25–26; 8:45 am]

**BILLING CODE P**

---

## DEPARTMENT OF HEALTH AND HUMAN SERVICES

### Health Resources and Services Administration

### Agency Information Collection Activities: Proposed Collection: Public Comment Request; Information Collection Request Title: 340B Rebate Model Pilot Program Application, Implementation, and Evaluation, OMB Number 0906–NEW

**AGENCY:** Health Resources and Services Administration (HRSA), Department of Health and Human Services.

**ACTION:** Notice.

**SUMMARY:** In compliance with the requirement for opportunity for public comment on proposed data collection projects of the Paperwork Reduction Act of 1995, HRSA announces plans to submit an Information Collection Request (ICR), described below, to the Office of Management and Budget (OMB). Prior to submitting the ICR to OMB, HRSA seeks comments from the public regarding the burden estimate, below, or any other aspect of the ICR.

**DATES:** Comments on this ICR should be received no later than April 27, 2026.

**ADDRESSES:** Submit your comments to *paperwork@hrsa.gov* or mail the HRSA Information Collection Clearance Officer, Room 13N82, 5600 Fishers Lane, Rockville, Maryland 20857.

**FOR FURTHER INFORMATION CONTACT:** To request more information on the proposed collection or to obtain a copy of the information collection plans and draft instruments, email *paperwork@hrsa.gov* or call Samantha Miller, the HRSA Information Collection Clearance Officer, at (301) 443–3983.

**SUPPLEMENTARY INFORMATION:** When submitting comments or requesting information, please include the ICR title for reference.

*Information Collection Request Title:* 340B Rebate Model Pilot Program Application, Implementation, and Evaluation, OMB No. 0906–XXXX.

*Abstract:* HRSA's Office of Pharmacy Affairs (OPA) is considering a potential 340B Rebate Model Pilot Program as a voluntary mechanism for qualifying drug manufacturers to effectuate the 340B ceiling price on select drugs to covered entities, and is requesting information from 340B stakeholders and others as described in a Request for Information (91 FR, 7287) issued on February 17, 2026.[1] This ICR includes the collection of proposed rebate model plans from qualifying drug manufacturers, the collection of reports from drug manufacturers approved for participation to allow OPA to evaluate the Pilot Program and enhance 340B Program integrity and compliance monitoring, and the collection of data submitted by covered entities to participating drug manufacturers to request a rebate in connection with a potential 340B Rebate Model Pilot Program.

*Need and Proposed Use of the Information:* This new proposed information collection request will replace an emergency clearance ICR, OMB No: 0906–0111 (Reference No: 202508–0906–002),[2] which HRSA discontinued. The scope of the potential 340B Rebate Model Pilot Program will be limited to manufacturers with Medicare Drug Price Negotiation Program Agreements with the Centers for Medicare & Medicaid Services' for the initial price applicability years 2026 and 2027.[3] This information collection request includes the collection of proposed rebate model plans from qualifying drug manufacturers, the ongoing collection of sales data from drug manufacturers to allow OPA to evaluate the pilot program and enhance 340B Program integrity and compliance monitoring, and the collection of data submitted by covered entities to manufacturers to request a rebate in connection with a potential 340B Rebate Model Pilot Program.

*Collection of Drug Manufacturer Applications:* OPA anticipates evaluating and approving manufacturer plans for participation in a potential 340B Rebate Model Pilot Program based on requirements published by OPA in future guidance.

*Collection of Reporting Data from Manufacturers:* In a potential 340B Rebate Model Pilot Program, manufacturers will be required to

---

[1] *Request for Information* (91 FR, 7287) issued on February 17, 2026, available at *https://www.federalregister.gov/documents/2026/02/17/2026-03042/request-for-information-340b-rebate-model-pilot-program.*

[2] 340B Rebate Model Pilot Program Application, Implementation, and Evaluation (0906–0111) available at *https://www.reginfo.gov/public/do/PRAViewICR?ref_nbr=202508-0906-002.*

[3] The Fact Sheets for Negotiated Prices for Applicability Years 2026 and 2027 includes the list of Primary Manufacturers with selected drugs, available at *https://www.cms.gov/files/document/fact-sheet-negotiated-prices-initial-price-applicability-year-2026.pdf* and *https://www.cms.gov/files/document/fact-sheet-negotiated-prices-ipay-2027.pdf* respectively.