# EXHIBIT C

## OMB No. 0906-New

## 340B Rebate Model Pilot Program

## Application, Implementation, and Evaluation Notice:

## Supporting Statement

**SUPPORTING STATEMENT**

# 340B Rebate Model Pilot Program Application, Implementation, and Evaluation Notice

**OMB Control No. 0906-NEW**

**Terms of Clearance: None**

## A. Justification

### 1. Circumstances Making the Collection of Information Necessary

The Health Resources and Services Administration (HRSA) is submitting this information collection request to the Office of Management and Budget (OMB) for review and approval of the 340B Rebate Model Pilot Program Application, Implementation, and Evaluation Notice. Section 602 of Public Law 102–585, the Veterans Health Care Act of 1992, created the 340B Drug Pricing Discount Program in section 340B of the Public Health Service Act (PHSA), which enables covered entities "to stretch scarce Federal resources as far as possible, reaching more eligible patients and providing more comprehensive services." H.R. Rep. No. 102–384(II), at 12 (1992). Eligible covered entity types are defined in section 340B(a)(4) of the PHS Act, as amended and codified at 42 U.S.C. 256b(a)(4)). Under sections 1927(a)(1) and (a)(5)(A) of the Social Security Act, a manufacturer must enter into an agreement with the Secretary that complies with section 340B of the PHS Act ''[i]n order for payment to be available under section 1903(a) or under part B of title XVIII of the Social Security Act for covered outpatient drugs of a manufacturer." When a manufacturer signs a Pharmaceutical Pricing Agreement (PPA)[1] it agrees that the prices charged for covered outpatient drugs to covered entities will not exceed statutorily defined 340B ceiling prices. 340B ceiling prices are based on quarterly pricing reports that manufacturers must provide to the Secretary through the Centers for Medicare & Medicaid Services (CMS) and are calculated and verified by HRSA.

HRSA's Office of Pharmacy Affairs (OPA), which administers the 340B Program, has received numerous requests from manufacturers related to implementation of proposed rebate models for the 340B Program. The manufacturer proposals varied in scope and how they would be operationalized. Whereas the 340B Program has traditionally operated as a point of sale or up-front discount program (i.e., a covered entity receives the 340B price reduction at the time of purchase), under a rebate model, a covered entity would initially purchase drugs at commercial prices and then, after dispensing the drugs to 340B patients, would submit claims to manufacturers for a cash rebate reflecting the difference between the acquisition cost and the 340B ceiling price. Section 340B(a)(1) of the PHSA states, "[t]he Secretary shall enter into an agreement with each manufacturer of covered outpatient drugs under which the amount required to be paid (taking into account any rebate or discount, as provided by the Secretary) to the manufacturer for covered outpatient drugs … purchased by a covered entity … does not exceed [designated ceiling prices.]" This provision in the 340B statute expressly gives the Secretary the authority to choose between rebates or discounts to effectuate the ceiling price. Implementing a rebate model proposal without Secretarial approval would violate section 340B(a)(1) of the PHSA.

OPA issued a Notice Regarding 340B Rebate Model Pilot Program[2] (2026 Notice) to provide a mechanism through which qualifying drug manufacturers may effectuate the 340B ceiling price for certain drugs sold to covered entities. The goal of the 340B Rebate Model Pilot Program (Pilot) is to

[1] See OMB Control No. 0915-0327.
[2] https://www.govinfo.gov/content/pkg/FR-2026-08-03/pdf/2026-15633.pdf

address nonduplication under the Medicare Drug Price Negotiation Program (MDPNP), to increase transparency and improve oversight of the 340B Program. HRSA will use data collected through the Pilot to more effectively prevent duplicate discounts relative to existing mechanisms and to inform future policy considerations related to program integrity and compliance.

The scope of the Pilot is be limited to the 11 digit National Drug Code (NDC-11) included on the Inflation Reduction Act's (IRA) MDPNP's Selected Drug List for 2026 and 2027[3] regardless of payer or indication. After assessment of the Pilot, which will include feedback from various stakeholders and data and reports that manufacturers send to HRSA to determine the effectiveness of the Pilot, HRSA may consider expanding the rebate model to other drugs or adopting the model on a more permanent basis.

HRSA developed the information collection request (ICR) to collect Pilot plans from manufacturers. The ICR also addresses the post-implementation collection of monthly sales and other data from manufacturers for HRSA's evaluation of the Pilot and for overall 340B program integrity surveillance and compliance monitoring, as well as the collection of data submitted by covered entities to manufacturers to request a rebate.

## 2. <u>Purpose and Use of Information Collection</u>

The information collected under the Pilot includes the following:

i. HRSA will evaluate and approve plans for participation in a Pilot based on the elements required in the anticipated 2026 Notice. At a minimum, those plans will include information that demonstrates compliance with the following criteria:

- Plan must identify the IT platform to be used for covered entity data submission and include assurances that all costs for IT platform used for data submission be borne by the manufacturer.
- Plan must allow for 90 calendar days' notice to covered entities and other impacted stakeholders before implementing an approved rebate pilot plan, with instructions for registering for any IT platforms. Changes to approved plans must be submitted to OPA for review and approval prior to implementation, including the mechanism by which covered entities are to acquire drugs included in the rebate model pilot. OPA will determine if the changes can take effect immediately or if they require a notification period to covered entities. Manufacturers will be expected to provide HRSA with a copy of their final approved plan for public posting on HRSA's website to ensure consistency with what HRSA approved.
- Plan must allow for covered entities to order the selected drugs under existing distribution mechanisms (e.g., 340B wholesaler accounts with wholesale acquisition cost [WAC] prices loaded) to ensure purchases flow through existing infrastructure.
- Plan must provide technical assistance/customer service component and ensure that opportunities to engage directly with the manufacturer in good faith regarding questions or concerns are made available to covered entities through both the IT platform and provide a point of contact at the manufacturer.
- Plan must ensure that the IT platform has assurances in place to ensure that the data is secure and protected and collection of the data is limited to the elements listed below in Section 2.iii that are necessary for providing 340B rebates pursuant to section 340B(a)(1) of the PHSA.

---

[3] Medicare Drug Price Negotiation Selected Drug List, available at https://www.cms.gov/files/zip/medicare-drug-price-negotiation-selected-drug-list.zip.

- Plan must ensure that the IT platform has mechanisms in place to protect the privacy and security of Protected Health Information or other Personally Identifiable Information, which is required to be safeguarded in a manner consistent with any applicable federal privacy and data security laws, including the Health Insurance Portability and Accountability Act (HIPAA).
- Plan must describe whether an exception that would not apply broadly to all covered entities, and if any, will be communicated to both HRSA and affected covered entities (e.g., covered entities without access to a third-party administrator or rural hospitals or health centers).
- Plan must ensure that covered entities are allowed to submit and report data (as detailed below), at a minimum, up to 45 calendar days from date of dispense, with allowances for extenuating circumstances and other exceptions, including adjustments when a 340B status change occurs on a claim.
- Plan must ensure that the IT platform will have the capacity to receive data from all applicable covered entities and to filter and use only the data required to effectuate the rebate (e.g., if drugs other than a selected drug for initial price applicability year 2026 or 2027 during its price applicability period under the MDPNP are submitted, the platform will be able to identify and discard unneeded data).
- Plan must ensure that the IT platform will have the capability to provide real-time reconciliation reports for covered entities to be informed of the rebate status of submitted claims.
- Plan must ensure that a quarterly 340B price file for each of the manufacturer's 11-digit NDCs is made available to covered entities, so that covered entities may use the price file in conjunction with pharmacy billing systems to appropriately account for actual acquisition cost (i.e., post rebate price) for Medicaid billing and also to assist with sliding fee scales or cost sharing with patients.
- Plan must require the manufacturer to provide HRSA/OPA with periodic reports consistent with the information outlined in2026 Notice, in a format and manner specified by HRSA/OPA (instructions forthcoming). Such reports should detail data on purchases provided through rebates, information related to claim denials, and other information that may evaluate the effectiveness of the rebate model.
- Plan must include the rebate calculation equal to the WAC less the 340B ceiling price on the day of dispense.
- Plan must specify that rebates are paid at the unit level.
- Plan must include details to accommodate up to 2 unreplenished accumulated packages during the implementation phase. Covered entities shall have a 15-calendar day grace period, in which they may submit rebate requests for up to 2 unreplenished accumulated packages, prior to the Pilot's effective date. For example, a covered entity may request a rebate for up to 2 packages of a product dispensed from its neutral inventory on December 16, even though the effective date for the product's participation in the pilot is January 1. The request for such rebates should still be made within 45 days of dispense.
- Plan must ensure that all rebates are paid to the covered entity (or denied, with documentation to support) within 10 calendar days of completed data submission. If the submission is returned for incomplete data, the 10-day clock for rebate payment will restart when all necessary data is submitted.
- Plan must ensure that 340B rebates are not denied based on eligibility or compliance concerns with diversion or Medicaid duplicate discounts, pursuant to sections 340B(a)(5)(A) and (B) of the Public Health Service Act and should provide for rationale and specific documentation for reasons claims are denied (e.g., nonduplication of discounts for a selected drug for which the MFP is required under MDPNP or 340B rebate provided to another covered entity on the same claim). Rebates may not be denied for perceived lack of WAC

purchases. If a manufacturer has concerns regarding Medicaid duplicate discounts, diversion, eligibility, or insufficient WAC purchases to support rebate requests, the manufacturer must raise those concerns directly with HRSA/OPA or utilize the 340B statutory mechanisms, such as audits and administrative dispute resolution, for addressing such issues. Covered entities are also afforded opportunities to raise concerns with HRSA/OPA if there are issues with rebate denials through reporting tools sent to 340Bpricing@hrsa.gov.

- Plan must ensure that its implementation of the Pilot is limited to using the 340B rebates model only on sales of selected drugs for the initial price applicability years 2026 or 2027, as included on the CMS Medicare Drug Price Negotiation Selected Drug List[4] ("List"), regardless of payer and only during the selected drug's effective dates of negotiated prices. The NDC-11s of the selected drug are included in the Pilot only to the extent they are on the List, and the selected drug is in its price applicability period in the IRA Drug Price Negotiation Program.

ii. In addition to the initial manufacturer plan submissions, the Pilot will require submission of monthly reports from participating drug manufacturers, detailing purchase data, information related to claim denials, and other information that may evaluate the effectiveness of the rebate model. This information will be provided to HRSA from manufacturers for all rebate claims submitted by covered entities and submitted through the 340B Prime Vendor. The specific information included in the data instrument, at a minimum, will include:

- Unique Claim Identifier
- Claim submission date
- 340B ID
- 11-digit NDC purchased
- Date of Service (dispense date)
- Quantity
- Unit Wholesale Acquisition Cost (WAC) price
- Unit 340B ceiling price
- Unit Maximum Fair Price (MFP)
- Rebate amount
- Rebate Date Paid
- Rejection Reason (if applicable)

In addition, HRSA will ask manufacturers for:

- Aggregated sales by covered entity type
- Average days from claim submission to rebate payment
- Number of rebates paid after 10 calendar days
- Number of rebates denied with denial reasons
- Number of MFP claims deduplicated as a result of the Pilot

iii. While HRSA will not be collecting data directly from covered entities as part of a Pilot, manufacturers' plans will require that covered entities submit readily available pharmacy and medical claims data on eligible 340B drug purchases to a third-party platform, in order to issue rebates on those dispenses to achieve the 340B ceiling price. The data fields are limited to:

[4] https://www.cms.gov/files/zip/medicare-drug-price-negotiation-selected-drug-list.zip

| Pharmacy Claims Data Fields | Medical Claims Data Fields |
|---|---|
| Date of Service | Date of Service |
| Date Prescribed | Claim Line Number |
| Rx number | Claim Number |
| Fill number | Unit of Measure |
| 11 Digit National Drug Code (NDC) | 11 Digit National Drug Code (NDC) |
| Quantity Dispensed | Quantity |
| Prescriber ID | Rendering Physician ID |
| Service Provider ID | Service Provider ID |
| 340B ID | 340B ID |
| Rx Bank Identification Number (BIN) | Health Plan Name |
| Rx Processor Control Number (PCN) | Health Plan ID |
| | Health Plan ID Qualifier (if available) |

**3. Use of Improved Information Technology and Burden Reduction**

Information technology has been used to reduce burden. All data to be collected is currently readily available information for covered entities and reports may be easily accessed through covered entities' 340B third-party administrators. Manufacturers in the Pilot will establish Information Technology (IT) platforms to accept the data from covered entities and facilitate the electronic transfer of funds for payment of rebates.

**4. Efforts to Identify Duplication and Use of Similar Information**

The information HRSA expects to collect from manufacturers will not be duplicative of any other information collection. The information that covered entities will provide to manufacturers is similar to information many covered entities currently provide to similar IT platforms to access 340B pricing for drugs dispensed at contract pharmacies. However, some payer information fields (ex. BIN/PCN) are fields not routinely requested for these 340B transactions. Additionally, medical claims data is generated from different sources than from retail pharmacy claims. While certain fields for medical claims use analogous data elements in place of pharmacy-specific fields, these substitutions reflect the structural differences between claim types and do not require covered entities to collect or maintain any new or additional information beyond what is already captured in the ordinary course of billing and claims processing for Medicare, Medicaid and commercial payers.

**5. Impact on Small Businesses or Other Small Entities**

The collection of information will impact small businesses, including rural health clinics, community health centers and other small safety-net providers that may be eligible for the 340B Program and identify as such. The information to be collected will be limited to the minimum required for the intended purposes of the Pilot and reflect data that covered entities are already required to maintain and furnish to other parties. The limited scope will be proportional to the number of dispenses relative

to the size of the covered entity. For example, a small health clinic will purchase and dispense a smaller volume of Initial Price Applicability Year (IPAY) 2026 and 2027 and therefore are not expected to generate a sizable number of reportable claims for the Pilot, limiting the burden on these entities.

6. **Consequences if Information Collected Less Frequently**

Manufacturers will submit plans for approval to participate in the Pilot. Once approved for the Pilot, participating manufacturers will be required to submit monthly purchase data reports to HRSA. If the monthly information is collected less frequently, the evaluation of the Pilot would be ineffective. Monthly reporting allows HRSA to monitor key performance indicators, including rebate payment timeliness, denial rates, claims submission volumes, and potential operational issues, on a more contemporaneous basis. More frequent reporting also enables HRSA to identify emerging trends, assess manufacturer compliance with Pilot requirements, and address potential concerns before they become systemic. If reporting were collected only on a quarterly basis, HRSA's ability to evaluate Pilot performance, conduct timely oversight, and assess program integrity would be significantly delayed. Monthly reporting therefore provides the level of timeliness necessary to support effective Pilot administration while minimizing reporting burden by limiting submissions to standardized data elements already maintained by manufacturers. Covered entities will be expected to collect and submit data routinely to obtain rebates quickly. Manufacturers are required to pay rebates within 10 calendar days of receiving a complete claim submission from a covered entity.

7. **Circumstances Relating to the Guidelines in 5 CFR 1320. 5**

The data will be collected in a manner fully consistent with the guidelines in 5 C.F.R. 1320.5(d)(2).

8. **Comments in Response to the Federal Register Notice/Outside Consultation**

**Section 8A**

A 60-day notice was published in the *Federal Register* for this ICR on February 26, 2026 (91 Fed. Reg. 9632).

A 30-day notice was published in the *Federal Register* for this ICR on June 15, 2026 (91 Fed. Reg. 35989).

There were one hundred and eighty (180) timely, non-duplicative public comments on the 60-day *Federal Register* notice and two hundred sixty-three (263)timely public comments on the 30-day *Federal Register* notice. Commenters included hospitals, health systems, federally qualified health centers (FQHCs), rural health providers, Tribal Health Programs, professional associations, state primary care associations, manufacturers, technology vendors, pharmacy organizations, consultants, and other interested stakeholders. Comments primarily addressed the estimated paperwork burden associated with the proposed information collection, data collection requirements, reporting processes, burden reduction strategies, privacy protections, and manufacturer reporting requirements. Many comments submitted during the 30-day comment period reiterated concerns raised during the 60-day comment period while providing additional operational examples and burden estimates.

Below is a summary of the principal issues raised during the 60-day and 30-day public comment periods and HRSA's responses.

**I. Estimated Burden on Covered Entities**

**Comment:** Many commenters stated that HRSA underestimated the burden associated with the proposed information collection. Commenters asserted that the estimated burden of five hours per reporting cycle did not adequately account for identifying eligible claims, formatting and validating data, submitting rebate requests, reconciling manufacturer payments, investigating denied claims, responding to manufacturer requests for additional information, maintaining documentation, staff training, workflow redesign, information technology modifications, vendor management, and ongoing operational support. Numerous commenters submitted organization-specific burden estimates that substantially exceeded HRSA's estimate and stated that implementation burden would vary depending on organizational size, pharmacy operations, existing information technology infrastructure, claim volume, and use of third-party administrators. Several commenters also stated that startup activities, systems development, and implementation costs constitute burden under the Paperwork Reduction Act and should be reflected in the Information Collection Request.

**Response:** HRSA appreciates these comments and recognizes that implementation burden may vary among covered entities depending on organizational size, pharmacy operations, information technology infrastructure, and existing business processes. HRSA reviewed the burden estimates submitted during both comment periods and determined that many estimates assumed reporting requirements that will not be included in Pilot, including manufacturer-specific reporting formats, submission of purchasing records, encounter-level clinical information, patient-level clinical information, real-time claims feeds, or customized reporting interfaces. Pilot will limit required reporting to standardized pharmacy and medical claims data elements necessary to effectuate rebates and evaluate the Pilot and does not require purchasing data or encounter-level information. The Pilot will also limit the scope to selected drugs included in the MDPNP during their applicable price applicability periods and rely primarily on information already maintained by covered entities through routine billing and dispensing activities. HRSA continues to believe that the estimated burden reasonably reflects the average paperwork burden associated with the information collection, across more than 15,000 covered entities, while recognizing that actual burden may vary among respondents, and is a modest compliance cost for a program that has reached $100 billion in annual purchases in 2025. HRSA will continue to evaluate implementation experience during the Pilot to inform future burden estimates.

**II. Standardization of Reporting Requirements**

**Comment:** Many commenters recommended that HRSA require standardized data elements, reporting formats, submission timelines, and reconciliation procedures across all participating manufacturers. Commenters expressed concern that manufacturer-specific reporting requirements would require covered entities to maintain multiple reporting workflows, increasing administrative burden. Several commenters also recommended that covered entities submit information through a centralized or neutral platform and requested that manufacturers be prohibited from requiring additional data beyond standardized reporting requirements.

**Response:** HRSA appreciates these recommendations. In response to comments received during both comment periods, the Pilot will require standardized pharmacy and medical claims data elements, require manufacturers to submit data definitions for HRSA approval, and limit required reporting to standardized claims information necessary to administer rebates and evaluate the Pilot. Manufacturer plans are subject to HRSA approval and may not require additional data elements beyond those approved as part of the Pilot. HRSA believes these revisions improve consistency among participating manufacturers while reducing unnecessary administrative burden.

**III. Reconciliation, Claims Denials, and Operational Burden**

**Comment:** Many commenters stated that the burden associated with the proposed information collection extends beyond submission of claims data and includes ongoing reconciliation, rebate tracking, denial management, dispute resolution, audit support, record retention, and coordination among pharmacy, finance, compliance, and information technology personnel. Numerous commenters cited operational experience under existing manufacturer reporting platforms and the MDPNP as evidence that reconciliation and denial management represent a substantial portion of the overall burden.

**Response:** HRSA appreciates these comments. In response, the Pilot will require participating manufacturers to provide real-time rebate status reporting, document the basis for rebate denials, and report denial information to HRSA. Covered entities will be provided with a defined pathway for challenging denied claims, and HRSA will monitor manufacturer compliance with established payment deadlines and may take appropriate enforcement action where delays occur. HRSA believes these revisions improve transparency while reducing unnecessary administrative burden associated with reconciliation and dispute resolution.

**IV. Duplicate Reporting and Existing Reporting Systems**

**Comment:** Many commenters stated that the proposed information collection duplicates information already submitted through existing manufacturer reporting systems and the Medicare Part D Claims Data 340B Repository. Commenters recommended that HRSA align reporting requirements with existing Federal reporting systems and minimize duplicative reporting.

**Response:** HRSA appreciates these comments. HRSA recognizes the importance of minimizing unnecessary duplication of information collections and, accordingly, has limited the required reporting under the Pilot to standardized claims information necessary to administer and evaluate the Pilot. The Pilot will also exclude purchasing records, encounter-level information, and other data elements that commenters identified as unnecessary to effectuate rebates.

HRSA does not agree, however, that the proposed information collection duplicates the Medicare Part D Claims Data 340B Repository. Although there is some overlap in certain standardized claims data elements, the Medicare Part D Claims Data 340B Repository and the Pilot serve different statutory and operational purposes. The Medicare Part D Claims Data 340B Repository does not effectuate the 340B ceiling price, administer manufacturer rebate payments, reconcile rebate claims, or evaluate operation of a rebate-based mechanism under section 340B of the Public Health Service Act. By contrast, the Pilot will use standardized claims information to effectuate the 340B ceiling price through rebates, evaluate rebate administration, improve transparency, and assess program integrity, including prevention of duplicate discounts. Accordingly, while HRSA will continue to coordinate with other HHS Federal agencies, as appropriate, the information collected under the Pilot serves a distinct purpose and is necessary to evaluate implementation of the rebate model.

**V. Privacy and Data Security**

**Comment:** Several commenters requested additional assurances regarding protection of claims information submitted to manufacturers and third-party vendors. Commenters recommended limiting required information to the minimum necessary, requiring safeguards for protected health information and personally identifiable information, and restricting manufacturer use of submitted data.

**Response:** HRSA appreciates these comments. In response, the Pilot will require participating manufacturers to utilize secure reporting platforms, limit collection to the minimum standardized data elements necessary to administer rebates, and implement safeguards consistent with applicable Federal privacy and security requirements. In addition, the Pilot notice provides that Pilot data should not be used for purposes other than those explicitly identified in the Pilot. The Pilot will also limit required reporting to standardized claims fields and does not require direct patient identifiers. HRSA believes these revisions appropriately address commenters' privacy and data security concerns.

**VI. Cash Flow and Payment Timing**

**Comment:** Many commenters expressed concern that requiring covered entities to purchase drugs at wholesale acquisition cost and subsequently receive rebates could create cash-flow challenges, particularly for smaller providers, rural hospitals, FQHCs, and Tribal Health Programs. Commenters requested prompt payment requirements and additional safeguards related to rebate timing.

**Response:** HRSA appreciates these comments. Although these comments extend beyond the paperwork burden associated with the information collection, the Pilot will require manufacturers to pay or deny complete rebate requests within 10 calendar days, require unit-level rebate processing, include transition provisions for implementation, and authorize HRSA to monitor manufacturer payment performance and take appropriate action where manufacturers repeatedly fail to comply with Pilot requirements. HRSA believes these provisions improve operational consistency while supporting implementation of the Pilot.

**VII. Manufacturer Reporting and Transparency**

**Comment:** Several commenters requested increased transparency regarding manufacturer performance, publication of approved manufacturer plans, reporting of rebate payments and denials, and additional oversight of manufacturer compliance. Manufacturer commenters generally supported standardized reporting requirements and requested clear reporting expectations.

**Response:** HRSA appreciates these comments. The Pilot will require manufacturers to submit periodic reports to HRSA, report rebate payments and denials, and comply with standardized reporting requirements established by HRSA. HRSA also intends to make approved manufacturer plans publicly available and publish aggregate information regarding Pilot implementation, consistent with applicable confidentiality requirements, to improve transparency and support evaluation of the Pilot.

**VIII. Comments Outside the Scope of the Information Collection**

**Comment:** Many commenters expressed views regarding broader policy issues associated with the proposed rebate model, including statutory authority, contract pharmacy policies, duplicate discounts, patient access, manufacturer restrictions, reimbursement policy, and overall implementation of the Pilot.

**Response:** HRSA appreciates these comments. Many of these comments concern broader policy issues associated with the design and implementation of the Pilot rather than the paperwork burden associated with this information collection. Nevertheless, HRSA considered these comments in developing the revised Pilot and incorporated revisions intended to standardize reporting requirements, reduce unnecessary burden, strengthen privacy protections, improve manufacturer accountability, and increase transparency. Comments concerning the overall design and

implementation of the Pilot will be addressed in the Notice announcing the 340B Rebate Model Pilot Program.

**Section 8B**

HRSA expects to receive comments from 340B stakeholders through 340Bpricing@hrsa.gov throughout the duration of the Pilot. Because this is a general request for feedback on the Pilot, this solicitation of comments would not require PRA clearance. The feedback received during the Pilot will assist HRSA with evaluating the effectiveness of a rebate approach for a limited set of drugs.

**9. Explanation of any Payment/Gift to Respondents**

Respondents will not receive any payments or gifts.

**10. Assurance of Confidentiality Provided to Respondents**

The information collected by HRSA will be kept secure and protected. HRSA and its contractors will comply with the HHS Standard for Encryption of Computing Devices and Information to prevent unauthorized access to government information. Manufacturers will be required to address data security and confidentiality in the plans they initially submit to HRSA for approval to participate in the Pilot.

Data will be kept private to the extent allowed by law.

**11. Justification for Sensitive Questions**

Sensitive questions (such as sexual behavior and attitudes, religious beliefs, and other matters that are commonly considered private), will not be asked.

**12. Estimates of Annualized Hour Burden**

Burden in this context means the time expended by persons to generate, maintain, retain, disclose, or provide the information requested. This includes the time needed to review instructions; to develop, acquire, install, and utilize technology and systems for the purpose of collecting, validating, and verifying information, processing and maintaining information, and disclosing and providing information; to train personnel and to be able to respond to a collection of information; to search data sources; to complete and review the collection of information; and to transmit or otherwise disclose the information. In order to estimate the burden to submit plans for participation in the Pilot and produce and submit monthly purchase reports, OPA estimated the number of viable participants in the Pilot based on current eligibility criteria.

The total annual burden hours estimated for this ICR are summarized in the table below, to reflect the number of respondents once the Pilot is fully implemented. This includes 11 manufacturers of IPAY 2026 and IPAY 2027 drugs.

**Estimated Burden Hours of Responses**

**Table 1**

| Form Name | Number of Respondents* | Number of Responses per Respondent | Total Responses | Average Burden per Response (in hours) | Total Burden Hours |
|---|---|---|---|---|---|
| 340B Program Rebate Model Pilot Program Plan Submission | 11 | 1 | 11 | 8 | 88 |
| Monthly purchase reports | 11 | 12 | 132 | 2 | 264 |
| Covered Entities reporting claims data to third party platform | 15,249** | 52 | 792,948 | 5 | 3,964,740 |
| Total | 15,260 | | 793,091 | | 3,965,092 |

* The 11 manufacturers will submit Plans and Monthly Purchase Reports (first two rows, above), while the 15,249 Covered Entities will submit Claims Data (third row, above). Therefore, the total number of respondents is 15,260.
** As of April 1, 2026.

13. **Estimated Annualized Burden Costs to Respondents**

The following is the burden cost estimate for this information collection request. The annualized burden costs for recipients reflects current Bureau of Labor Statistics data (May 2025), which have doubled to account for overhead costs and benefits.

| Type of Respondent | Instrument | Total Estimated Burden Hours | Hourly Wage Rate | Total Respondent Costs |
|---|---|---|---|---|
| Lawyer | 340B Program Rebate Model Pilot Program Plan Submission | 88 | $178.70/ hour | $15,726 |
| Accountant | Monthly purchase reports | 264 | $91.12/ hour | $24,056 |
| Pharmacist | Covered Entities reporting claims data to third party platform | 3,964,740 | $135.5/hour | $537,222,270* |
| **Estimated Total** | | **3,965,356** | **-** | **$537,262,052** |

*The 340B Program's size and scale, covering more than 15,000 covered entities, means that even modest operational changes produce large aggregate cost figures. That same size and scale is precisely why HRSA must retain the flexibility to implement the program in accordance with its statutory authority and

refine program mechanisms in order to address program integrity challenges such as duplicate discounts and diversion. The limited scope of the Pilot affects only approximately 5 percent of total 340B sales while the remaining 95 percent continue under the existing upfront discount model, and the anticipated program integrity benefits are expected to outweigh the compliance costs. Moreover, even accounting for the full estimated burden, participation in the 340B Program remains a substantial financial benefit for covered entities.

**14. Annualized Cost to the Federal Government**

The total annualized cost to the Federal Government for this information collection is estimated to be $48,767.68. The GS-14 Pharmacist will also spend approximately 20% of their time annually reviewing incoming plan submissions, sales data and comments on the effectiveness of the Pilot. The hourly salary is $78.15, which is multiplied by 1.5 to account for overhead costs in the table below (bringing the total to $48,256)

| Type of Federal Program Staff | Average Total Annual Burden Hours | Hourly Wage Rate* | Total Costs |
|---|---|---|---|
| Pharmacist GS-14, Step 5 average | 416 | $117.23 | $48,767.68 |

*Wage rate is based on 2025 OPM Pay Schedule for Washington DC area Please note that this figure has been multiplied 1.5 times to account for benefits to Federal government workers.

**15. Explanation for Program Changes or Adjustments**

This is the initial clearance request; therefore, there are no changes or adjustments.

**16. Plans for Tabulation, Publication, and Project Time Schedule Time Schedule**

A manufacturer with an approved plan to participate in the Pilot will be identified on the OPA website. An evaluation of the Pilot may be displayed as a Program Update on the OPA website upon completion of the Pilot.

**17. Reason(s) Display of OMB Expiration Date is Inappropriate**

No exemption is requested. The OMB number and Expiration date will be displayed on every page of every form/instrument.

**18. Exceptions to Certification for Paperwork Reduction Act Submissions**

There are no exceptions to the certification.